**Stanley Russell SCALES,
Jr., Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

**No. 97–70915.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 2000

Filed Nov. 21, 2000

Karen Gilbert, Seattle, Washington, for the petitioner.

Michelle Slack, U.S. Department of Justice, Washington, D.C., for the respondent.

Before: B. FLETCHER and TASHIMA, Circuit Judges, and DUPLANTIER, District Judge.*

TASHIMA, Circuit Judge:

Stanley Russell Scales, Jr. ("Petitioner"), petitions for review of a decision of the Board of Immigration Appeals ("BIA"), dismissing his appeal from a final order of deportation. Petitioner contends that he is a United States citizen by virtue of his father's U.S. citizenship; therefore, that he is not deportable under

* The Honorable Adrian G. Duplantier, Senior United States District Judge for the Eastern District of Louisiana, sitting by designation.

§ 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(2)(A)(iii), as an alien convicted of an aggravated felony.[1] We must decide whether 8 U.S.C. § 1401 requires a blood relationship between a person born outside the United States and his U.S. citizen parent, a question of first impression. We hold that it does not, and so grant the petition.

## Review Jurisdiction

■ Under the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996) ("IIRIRA"), we lack jurisdiction over this appeal if Petitioner is an alien deportable because of having committed an aggravated felony.[2] IIRIRA § 309(c)(4)(G); see Magana–Pizano v. INS, 200 F.3d 603, 607 (9th Cir.1999); Briseno v. INS, 192 F.3d 1320, 1322 (9th Cir.1999).[3] "We have jurisdiction to determine whether we have jurisdiction over the merits of this petition for review," however. Alberto–Gonzalez v. INS, 215 F.3d 906, 908 (9th Cir.2000).

We have jurisdiction over a nationality claim under 8 U.S.C. § 1252(b)(5), which provides the following procedure to determine nationality claims:[4]

(A) Court determination if no issue of fact

If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

(B) Transfer if issue of fact

If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.

8 U.S.C. § 1252(b)(5).[5]

## Background

Petitioner was born in the Philippines in 1977, to Stanley Scales, Sr. ("Scales"), an

---

**1.** Petitioner also contends that the retroactive application of § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to his case violates the due process clause. Because we grant his petition on the basis that he is a U.S. citizen, we do not address his claim regarding the AEDPA.

**2.** IIRIRA's transitional rules apply to cases in which a final deportation or exclusion order was filed after October 30, 1996, and which were pending before April 1, 1997. See Hose v. INS, 180 F.3d 992, 995 (9th Cir.1999) (en banc). The transitional rules apply here because deportation proceedings were commenced against Petitioner on February 6, 1996, and the final deportation order was filed on August 1, 1997.

**3.** IIRIRA § 309(c)(4)(G) provides, in part, that

there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B),

(C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act)....

IIRIRA § 309(c)(4)(G).

**4.** Although "[n]ationality and citizenship are not entirely synonymous ... [t]he distinction has little practical impact today.... The provision that a child born abroad out of wedlock to a United States citizen mother gains her nationality has been interpreted to mean that the child gains her citizenship as well...." Miller v. Albright, 523 U.S. 420, 467 n. 2, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (Ginsburg, J., dissenting).

**5.** Prior to IIRIRA, a similar provision was codified at 8 U.S.C. § 1105a(a)(5). IIRIRA § 306 repealed § 1105a and amended § 1252 by adding, inter alia, the above-quoted subsection. The subsection became effective on April 1, 1997. IIRIRA § 306(c), as amended by Act of October 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656, § 2(1); Andreiu v. Reno, 223 F.3d 1111, 1113 (9th Cir.2000).

American citizen-serviceman at the time, and Aily Topaz, a Philippine citizen. Scales and Topaz met during the first week of September 1976, and one week later, Topaz told Scales that she was pregnant, probably from a prior relationship. Topaz and Scales were married on March 13, 1977, and Petitioner was born on April 6, 1977. When Petitioner was two years old, the family moved to Texas, where they lived until about 1988, at which time they moved to the State of Washington, where they all apparently still live. Scales and Topaz separated in 1994. There is nothing in the record to indicate that Scales has ever treated Petitioner as other than his own son.

On January 12, 1996, Petitioner was convicted in the Superior Court for King County, Washington, of a violation of the Uniform Controlled Substances Act, Wash. Rev.Code § 69.50, for possession with intent to deliver cocaine. On February 6, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause, charging Petitioner as deportable under INA § 241(a)(2)(A)(iii), as an alien convicted of an aggravated felony.[6]

At his deportation hearing, Petitioner conceded that he was a citizen of the Philippines, and that he was deportable as an alien convicted of an aggravated felony. On appeal to the BIA, however, Petitioner contended that he is actually a U.S. citizen, based on "the principle that children born during a valid marriage are presumed offspring of that marriage." Petitioner also argued that it was possible that Scales was his natural father. The BIA rejected his arguments on the merits, citing an affidavit of non-paternity that his father had signed in order to obtain an immigrant visa for Petitioner when the family moved to the United States in 1979. In the affidavit, Scales stated that he was not Petitioner's natural father, that his wife was pregnant at the time she and Scales met, and that he "accept[ed] [Petitioner] as [his]

own son in every legal sense permissible, but [ ] did not make any attempts of making a claim for U.S. citizenship for him at this time or at any other time."

The BIA reasoned that, in order "to acquire United States citizenship at birth there must be a blood relationship between the child and the parent through whom citizenship is claimed," citing the Foreign Affairs Manual of the State Department. Because there was no evidence in the record that Petitioner was Scales' biological child, the BIA dismissed the appeal. The BIA further rejected Petitioner's claim for relief under INA § 212(c), citing, inter alia, AEDPA § 440(d) and *Matter of Soriano*, Int. Dec. 3289, 1996 WL 426888 (B.I.A.1996, A.G.1997) (holding that AEDPA § 440(d) applied retroactively to bar § 212(c) relief).

## Standard of Review

 Where, as here, the BIA conducts a de novo review of the record, our review is limited to the decision of the BIA, except to the extent that the Immigration Judge's decision is expressly adopted by the Board. *See Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir.1995). "Factual determinations of the BIA are reviewed under the substantial evidence standard, and are upheld unless the evidence compels a contrary conclusion." *Andriasian v. INS*, 180 F.3d 1033, 1040 (9th Cir.1999) (internal quotation marks and citation omitted). The BIA's determination of purely legal questions regarding the INA is reviewed de novo. *See Coronado–Durazo v. INS*, 123 F.3d 1322, 1324 (9th Cir. 1997).

## Analysis

 " 'The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth.' " *United States v. Viramontes–Alvarado*, 149 F.3d 912, 915 (9th

---

**6.** INA § 241(a)(2)(A)(iii) then provided that "[a]ny alien who is convicted of an aggravated felony at any time after entry is deporta-

ble." 8 U.S.C. § 1251(a)(2)(A)(iii) (recodified as amended in 1996 at 8 U.S.C. § 1227(a)(2)(A)(iii)).

Cir.) (quoting *Ablang v. Reno*, 52 F.3d 801, 803 (9th Cir.1995)), *cert. denied*, 525 U.S. 976, 119 S.Ct. 434, 142 L.Ed.2d 354 (1998). In 1977, the year of Petitioner's birth, the applicable statute provided, *inter alia*, that a person shall be a national and citizen of the United States at birth who is

> born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years: *Provided,* That any periods of honorable service in the Armed Forces of the United States ... may be included in order to satisfy the physical-presence requirement of this paragraph.

8 U.S.C. § 1401(a)(7) (1976) (redesignated in 1978 as § 1401(g)). In addition, 8 U.S.C. § 1101 provided:

> The term "child" means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, and ... a child adopted in the United States, if such legitimation or adoption takes place before the child reaches the age of sixteen years, and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.

8 U.S.C. § 1101(c)(1) (1976). Petitioner contends that, under the law of Washington, where the family has resided since Petitioner was 11 years old, there is a presumption that a man is the natural father of a child born during marriage. *See* Wash. Rev.Code § 26.26.040(1) (1986).[7] He thus argues that he was "legitimated" for purposes of § 1101(c)(1) and therefore meets the citizenship requirement of § 1401(a)(7) of being born of a citizen parent.

 The government, on the other hand, points to Scales' affidavit of non-paternity and Petitioner's own admission in his deportation hearing that he is a Philippine citizen as proof of Petitioner's alienage. In deportation proceedings, the INS has the burden of establishing the facts supporting deportability by "clear, unequivocal, and convincing evidence." *Woodby v. INS*, 385 U.S. 276, 277, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); *see also Murphy v. INS*, 54 F.3d 605, 608 (9th Cir. 1995). Evidence of foreign birth, however, gives rise to a rebuttable presumption of alienage, and the burden then shifts to the petitioner to prove citizenship. *See Corona–Palomera v. INS*, 661 F.2d 814, 818 (9th Cir.1981); *see also Matter of Leyva*, 16 I. & N. Dec. 118, 119 (BIA 1977).

 Petitioner concedes that he was born in the Philippines, giving rise to the presumption of alienage. The circumstances surrounding his birth are not generally disputed, although Petitioner contends that it is possible that Scales is actually his natural father. Therefore, Petitioner's arguments in support of his citizenship rely not so much on disputed facts as on the Washington state-law presumption that Scales is his father because he was born in wedlock.[8] This state-law pre-

---

7. At the time Petitioner's family moved to Washington, the statute provided, in part, that "[a] man is presumed to be the natural father of a child if: (a) He and the child's natural mother are or have been married to each other and the child is born during the marriage." Wash. Rev.Code § 26.26.040(1)(a) (amended in 1989, inserting "for all intents and purposes" before "if").

8. Because these terms are not defined in the INA, *see* 8 U.S.C. § 1101, we rely on dictionary definitions. A "legitimate" child is one "[b]orn of legally married parents," or "born or begotten in lawful wedlock or legitimized by the parents' later marriage." *Black's Law Dictionary* 912, 232 (7th ed.1999). An "illegitimate child" is one "neither born nor begotten in lawful wedlock nor later legitimized." *Id.* at 232. A "natural child" can be a "child by birth, as distinguished from an adopted child," or "[a]n illegitimate child acknowledged by the father." *Id.* at 232–33.

sumption, that Scales is Petitioner's natural father, in turn, may be rebutted "only by clear, cogent, and convincing evidence." Wash. Rev.Code § 26.26.040(2). The government contends that the presumption is overcome by Scales' affidavit of non-paternity.

■ "There are 'two sources of citizenship, and two only: birth and naturalization.'" *Miller v. Albright*, 523 U.S. 420, 423, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (quoting *United States v. Wong Kim Ark*, 169 U.S. 649, 702, 18 S.Ct. 456, 42 L.Ed. 890 (1898)). Citizenship at birth can be acquired by being born in the United States. If a person is not born in the United States, he or she can acquire citizenship at birth only as provided by Congress. *See id.* at 423–24, 118 S.Ct. 1428. Petitioner has not been naturalized, claiming instead that he acquired citizenship at birth by being born to a citizen father.

The statutory provisions concerning citizenship do not address the situation presented here, where the child is "legitimate" by virtue of his parents being married at the time of his birth, yet he may not be the "natural," or biological, child of the citizen parent. Section 1401(g) merely states that a person "born . . . of parents one of whom is an alien, and the other a citizen of the United States" is a citizen, if the residency requirement is met by the citizen parent.[9] It does not address whether being "born of parents" requires only that the person be born in wedlock, or, as the BIA concluded, that there must be a blood relationship between the person claiming citizenship and the citizen parent. A straightforward reading of § 1401 indicates, however, that there is no requirement of a blood relationship. Thus, even if the affidavit of non-paternity is sufficiently "clear, cogent, and convincing" to overcome the state law presumption that Scales is Petitioner's natural father, it does not defeat Petitioner's acquisition of citizenship under § 1401.

The INA does expressly require a blood relationship between a person claiming citizenship and a citizen father, if the person is born out of wedlock. *See* 8 U.S.C. § 1409(a)(1) (setting forth legitimation requirements for a person born out of wedlock to a citizen father). This provision does not apply to Petitioner, however, because he was born to parents who were married at the time of his birth.

In *Miller*, Justice Stevens noted that, if a child is born out of wedlock to a citizen father,

> the unmarried male . . . need not participate in the decision to give birth rather than to choose an abortion; he need not be present at the birth; and for at least 17 years thereafter he need not provide any parental support, either moral or financial, to either the mother or the child, in order to preserve his right to confer citizenship on the child pursuant to § 1409(a).

*Miller*, 523 U.S. at 434, 118 S.Ct. 1428 (discussing why it is rational to require a citizen father to acknowledge paternity of a child born out of wedlock). These concerns presumably are not present if a child is born in wedlock. Moreover, § 1409 clearly was enacted, "at least in part, to ensure that a person born out of wedlock who claims citizenship by birth actually shares a blood relationship with an American citizen." *Id.* at 435, 118 S.Ct. 1428. If Congress had wanted to ensure the same about a person born in wedlock, "it knew how to do so." *Custis v. United States*, 511 U.S. 485, 492, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994); *cf. Lindh v. Murphy*, 521 U.S. 320, 329, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (noting that AEDPA § 107(c) treats chapter 153 of Title 28 differently that chapter 154 of the same title, and stating that, "[n]othing, indeed, but a different intent explains the different treatment"); *Defenders of Wildlife v. Browner*, 191 F.3d 1159, 1165 (9th Cir.

---

9. Section 1101(c)(2), which defines the term "parent" for purposes of § 1401, merely states that it "include[s] in the case of a posthumous child a deceased parent, father, and mother." 8 U.S.C. § 1101(c)(2) (1976).

1999), *amended by* 197 F.3d 1035 (9th Cir.1999) (" '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion' " (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)) (alteration in original)).

■■■ Presumably because of the lack of authority addressing the instant issue, the government quotes the State Department Foreign Affairs Manual, relied on by the BIA, which provides as follows:

> The laws on acquisition of U.S. citizenship through a parent have always contemplated the existence of a blood relationship between the child and the parent(s) through whom citizenship is claimed. It is not enough that the child is presumed to be the issue of the parents' marriage by the laws of the jurisdiction where the child was born. Absent a blood relationship between the child and the parent on whose citizenship the child's own claim is based, U.S. citizenship is not acquired.

7 U.S. Dep't of State, Foreign Affairs Manual § 1131.4–1(a), *reprinted in* Charles Gordon et al., 17 *Immigration Law and Procedure* 44 (rev. ed. 2000) ("FAM"). The government urges that we defer to the FAM as an agency interpretation of statute, citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that, when statutory language is ambiguous, courts should defer to the reasonable interpretation of the agency charged by Congress with implementing the statute). Determi-

nation of Petitioner's citizenship is not a duty of the State Department, however, but of the Attorney General. *See* 8 U.S.C. § 1103.

8 U.S.C. § 1104 provides:

> The Secretary of State shall be charged with the administration and the enforcement of the provisions of this chapter and all other immigration and nationality laws relating to (1) the powers, duties, and functions of diplomatic and consular officers of the United States ...; (2) the powers, duties, and functions of the Administrator [designated by the Secretary of State to administer the Secretary's duties, *see* 8 U.S.C. § 1104(b)]; and (3) the determination of nationality of a person not in the United States.

8 U.S.C. § 1104(a); *cf.* 7 FAM Vol. § 1131.1–1(b) ("Section 104(a) of the [INA] gives the Secretary of State the responsibility for the administration and enforcement of all nationality laws relating to 'the determination of nationality of a person not in the United States.' "). Because Petitioner is not a "person not in the United States," the State Department is not the agency entrusted with the determination of Petitioner's citizenship; therefore, its statement is not entitled to deference.[10] *See Proffitt v. FDIC,* 200 F.3d 855, 860 (D.C.Cir.) ("When a statute is administered by more than one agency, a particular agency's interpretation is not entitled to *Chevron* deference."), *reh'g en banc denied,* 208 F.3d 1066 (2000); *cf. Kaczmarczyk v. INS,* 933 F.2d 588, 594 (7th Cir. 1991) ("[W]e give considerable weight to [the State] Department's opinion in mat-

---

**10.** The government cites *Magnuson v. Baker,* 911 F.2d 330 (9th Cir.1990), which states that "Congress' vesting of the power in the Secretary of State to determine citizenship flows naturally from the State Department's duties." *Id.* at 333 n. 5. This statement in *Magnuson,* however, was in the context of the court's construction of 22 U.S.C. § 2705, which provides that a passport issued by the Secretary of State has "the same force and effect as proof of United States citizenship as

certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction." *Id.* at 332 (quoting 22 U.S.C. § 2705). "Prior to the enactment of section 2705, only the Attorney General or a naturalization court could determine who is a citizen of the United States." *Id.* at 333. Thus, *Magnuson* does not address the State Department's authority over citizenship determinations in a case such as Petitioner's.

ters concerning international affairs, *its area of expertise.*") (emphasis added).[11]

Moreover, the statement in the FAM is not specifically an interpretation of § 1401 and, importantly, it is not an interpretation "arrived at after, for example, a formal adjudication or notice-and-comment rule-making. Interpretations such as those in opinion letters—like interpretations contained in policy statements, *agency manuals,* and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000) (emphasis added); *see also Moore v. Apfel,* 216 F.3d 864, 869 & n. 2 (9th Cir.2000) (declining to apply *Chevron* deference to Social Security Commissioner's HALLEX Manual, citing *Christensen* ); *cf. United States v. Navarro,* 160 F.3d 1254, 1257 n. 4 (9th Cir.1998) (noting that Department of Justice's Manual for United States Attorneys does not affect statutory analysis), *cert. denied,* 527 U.S. 1011, 119 S.Ct. 2354, 144 L.Ed.2d 249 (1999). We therefore decline to defer to the State Department's statement on citizenship in the FAM.

Section 1401 requires only that Petitioner be "born ... of parents," one of whom is a U.S. citizen, in order to acquire citizenship. The record is uncontroverted that Petitioner was born to Topaz and Scales during their marriage. There is no requirement of a blood relationship between Petitioner and his citizen father, as there is for an illegitimate child. We therefore hold that Petitioner acquired citizenship at birth under § 1401.

We thus grant the petition for review, reverse the order of the BIA dismissing Petitioner's appeal, and remand for such further proceedings consistent with this opinion as may be necessary.

Petition for review **GRANTED.**

---

11. There is no INS regulation interpreting § 1401 that addresses the issue at bench.