Eun Kyung PARK, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 97–71373.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 8, 2001[*]

Filed March 6, 2001

[*] The panel unanimously finds this case suitable for decision without oral argument. Fed.

R.App.P. 34(a)(2).

Michael P. Karr, Michael P. Karr & Associates, Sacramento, California, for the petitioner.

Jeffrey J. Bernstein, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for the respondent.

Before: GOODWIN, GRABER, and PAEZ, Circuit Judges.

PAEZ, Circuit Judge:

This appeal from the Board of Immigration Appeals ("BIA") raises the question whether a conviction for involuntary manslaughter under California Penal Code § 192(b) constitutes an "aggravated felony" for which an alien is deportable under 8 U.S.C. § 1251(a)(2)(A)(iii), now codified at 8 U.S.C. § 1227(a)(2)(A)(iii). We hold that it does and, therefore, dismiss the appeal for lack of jurisdiction.

## BACKGROUND

Petitioner Eun Kyung Park is a native and citizen of South Korea. She first entered the United States in December 1983 under an F–1 student visa. She obtained a bachelor's degree in theology from California Union College, a master's degree

from Linda Vista Baptist Bible College and Seminary, and is now an ordained minister.

On May 23, 1996, Park pled guilty to and was convicted of involuntary manslaughter under California Penal Code § 192(b) for her involvement in the beating death of a 25–year–old woman on March 8, 1995, during a religious ceremony to exorcize demons. Park received a sentence of three years in state prison.

While Park was still in custody, on August 29, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause ("OSC"), which, as amended on February 26, 1997, alleged that Park was deportable as an alien convicted of an "aggravated felony" pursuant to § 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA").[1]

Park's hearing before an immigration judge ("IJ") was originally scheduled for March 5, 1997, but was continued several times to accommodate Park's unprepared attorney. Another attorney appeared as co-counsel at a hearing on April 25, but then subsequently withdrew, citing lack of cooperation from Park's original attorney. At the final hearing on May 9, the IJ denied the request for another continuance by Park's original attorney and ordered Park deported based on the allegations in the OSC, because "no application of relief from deportation had been filed by the Respondent."

In response to the adverse ruling, Park pursued two different avenues of relief. First, on May 15, 1997, Park filed a petition for writ of habeas corpus with the U.S. District Court for the Northern District of California, alleging that: (1) the IJ engaged in judicial misconduct; (2) the involuntary manslaughter conviction violated the Free Exercise Clause of the First Amendment; and (3) the involuntary manslaughter conviction was not a deportable offense.[2]

Second, on May 30, 1997, Park appealed the immigration judge's decision to the BIA. The BIA conducted a de novo review of the record and sustained the finding of deportability on November 14, 1997. The BIA concluded that: (1) the IJ did not abuse her discretion in denying Park's last motion for a continuance; (2) the withdrawal of co-counsel before the final hearing did not prejudice Park's case; and (3) Park's "conviction record ... establishe[d] by clear, unequivocal, and convincing evidence, that [she was] deportable as charged."

Park petitioned for review of the BIA decision to this court which, on January 29, 1998, ordered the appeal held in abeyance until certain jurisdictional issues were resolved in the then-pending case of *Magana–Pizano v. INS*, 152 F.3d 1213 (9th Cir.1998), *vacated by* 526 U.S. 1001, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999), *remanded to* 200 F.3d 603 (9th Cir.1999).

## DISCUSSION

### A. Jurisdiction and Standard of Review

■■■ Under the transitional rules[3] of the Illegal Immigration Reform and Immi-

---

1. The original OSC alleged that Park was deportable because she had entered the United States without inspection and had been convicted of a crime involving moral turpitude within five years of entry and had been sentenced to confinement of one year or longer. Upon stipulation by Park and the INS that Park actually entered the country legally in 1983 under a student visa, the immigration judge amended the OSC to reflect this fact. The INS does not pursue either of these grounds for deportation in its brief to this court (because Park entered with inspection and she committed the offense more than five years after entry).

2. The district court denied the petition on March 9, 1999, holding that: (1) there was no judicial misconduct; (2) Park could not collaterally attack her underlying conviction in a habeas petition against the INS; and (3) involuntary manslaughter was a "crime of violence" under existing Ninth Circuit precedent and thus a deportable offense. *Park v. Schlitgen*, No. C 97–1813, 1999 WL 138887 (N.D.Cal. Mar.9, 1999). Park did not appeal the district court's ruling.

3. Immigration proceedings initiated by the INS before IIRIRA's general effective date of April 1, 1997, but where the final deportation

grant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996) ("IIRIRA"), we lack jurisdiction to hear Park's appeal if Park is an alien deportable because of a conviction for an "aggravated felony." *Scales v. INS,* 232 F.3d 1159, 1161 (9th Cir.2000). Nevertheless, we retain jurisdiction to determine our own jurisdiction. *Id.* We review de novo the threshold question whether a particular offense constitutes an "aggravated felony" for which an alien is deportable. *Ye v. INS,* 214 F.3d 1128, 1131 (9th Cir. 2000).

### B. Crime of Violence

 Any alien—including a legal, permanent resident alien—who is convicted of an "aggravated felony" at any time after admission to this country is deportable under 8 U.S.C. § 1251(a)(2)(A)(iii), now codified at 8 U.S.C. § 1227(a)(2)(A)(iii). The statutory definition of "aggravated felony" does not specifically include involuntary manslaughter in its list of enumerated offenses. *See* 8 U.S.C. § 1101(a)(43). The definition, however, encompasses a "crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Section 16 of Title 18 defines a "crime of violence" as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may

be used in the course of committing the offense.

18 U.S.C. § 16.

We previously have held that involuntary manslaughter is a "crime of violence" under a different, although almost identically-worded, statute. *See United States v. Springfield,* 829 F.2d 860, 863 (9th Cir. 1987). In *Springfield,* a defendant whose primary offense was involuntary manslaughter under 18 U.S.C. § 1112 appealed a federal conviction under 18 U.S.C. § 924(c) (use of a firearm in a crime of violence). The court held that federal involuntary manslaughter was a "crime of violence" as defined in 18 U.S.C. § 924(c)(3).[4] *Id.* at 863 ("[I]nvoluntary manslaughter, which 'by its nature' involves the death of another person, is highly likely to be the result of violence. . It thus comes within the intent, if not the precise wording, of section 924(c)(3).").

California Penal Code § 192(b) and 18 U.S.C. § 1112 define involuntary manslaughter in nearly identical terms. Section 192(b) provides:

Manslaughter is the unlawful killing of a human being without malice. . . .

(b) Involuntary-in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. This subdivision shall not apply to acts committed in the driving of a vehicle.

Section 1112 similarly provides:

Manslaughter is. the unlawful killing of a human being without malice. . . .

Involuntary–In the commission of an unlawful act not amounting to a felony, or

---

or exclusion order is filed after October 30, 1996, are governed by interim transitional rules. *See* IIRIRA § 309(c); *Magana–Pizano v. INS,* 200 F.3d 603, 607 (9th Cir.1999). The transitional rules apply to Park's appeal because the INS initiated proceedings by issuing an OSC on August 29, 1996, and the BIA did not issue a final deportation order until November 14, 1997.

**4.** Section 924(c)(3) states:

For purposes of this subsection the term "crime of violence" means an offense that is a felony and-
(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

With the exception of the California provision for vehicular manslaughter, which is not applicable to this appeal, the statutes share almost identical wording. Thus, *Springfield* cannot be distinguished on the basis of different text in the federal and California manslaughter statutes.

Nor can *Springfield* be distinguished on the basis of different statutory definitions of "crime of violence." The definitions in 18 U.S.C. § 924(c)(3) and 18 U.S.C. § 16 are identical in every respect except that § 924(c)(3) requires that the offense be a felony for both subsection (a) and (b), whereas § 16 requires that the offense be a felony only for subsection (b). *See supra* note 4. It follows, then, that a "crime of violence" under the narrower § 924(c)(3) will always be a "crime of violence" under § 16. *See United States v. Moore,* 38 F.3d 977, 980 (8th Cir.1994) ("The language of § 16 is nearly identical to that of § 924(c)(3).").

Given the nearly wording in the two statutory schemes, *Springfield*'s holding controls here. We conclude that involuntary manslaughter under California law is a "crime of violence" under 18 U.S.C. § 16.[5]

## C. Divisibility and Intent

■ Park argues that California's involuntary manslaughter statute is divisible and must be analyzed with respect to the specific circumstances of her crime. This circuit, however, favors a categorical approach to this determination, "looking only to the statutory definition[ ] of the prior offense." *Ye,* 214 F.3d at 1133 (citations and internal quotation marks omitted). The only exception occurs when a statute "reaches both conduct that would consti-

tute a crime of violence and conduct that would not." *Id.* (referencing Cal.Penal Code § 459). Our conclusion that involuntary manslaughter is "by its nature" a crime of violence renders this exception inapplicable. *Springfield,* 829 F.2d at 863.

Park also argues that a "crime of violence" requires specific intent. In *Springfield,* we reviewed the relevant legislative history and concluded otherwise:

The legislative history indicates that Congress did not intend to limit "crimes of violence" to crimes of specific intent: "Since no culpability level is prescribed in this section, the applicable state of mind that must be shown is, at a minimum, 'reckless,' i.e., that the defendant was conscious of but disregarded the substantial risk that the circumstances existed." S.Rep. No. 307, 97th Cong., 1st Sess. 890–91 (1982). Our analysis of involuntary manslaughter in terms of the likelihood of the occurrence of violence reconciles the words of the statute and the legislative intent to include non-intent crimes.

829 F.2d at 863 n. 1. We therefore reject Park's argument.

## D. Retroactivity

■ Park argues that the definition of "aggravated felony" as amended by IIRIRA should not apply retroactively to her. Section 321(a) of IIRIRA reduced the sentencing requirement for an "aggravated felony" from "at least 5 years" to "at least one year" upon its enactment on September 30, 1996. Park pled guilty and was convicted of involuntary manslaughter on May 23, 1996, and was sentenced to a three-year prison term. Thus, even if involuntary manslaughter is categorically a "crime of violence," Park's offense would not have qualified as an "aggravated felony" under the pre-IIRIRA definition.

IIRIRA, however, clearly states, and we have so held, that the modified definition

---

**5.** The BIA reached a similar conclusion in *Matter of Alcantar,* 20 I. & N. Dec. 801, 813–14 (1994) (involuntary manslaughter under Illinois law is a "crime of violence" under 18

U.S.C. § 16(b)). The district court also found *Springfield* controlling in its order denying Park's petition for habeas corpus relief. *Park,* 1999 WL 138887, at *8.

of "aggravated felony" applies retroactively to all defined offenses, regardless of the date of conviction. *See* IIRIRA § 321(b) (codified at 8 U.S.C. § 1101(a)(43)) ("Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after [September 30, 1996]."); *Aragon–Ayon v. INS,* 206 F.3d 847, 853 (9th Cir.2000) (holding that "Congress intended the 1996 amendments to make the aggravated felony definition apply retroactively to all defined offenses whenever committed").

Although the date of the underlying criminal conviction does not matter, IIRIRA § 321(c) specifies that the amended definition of "aggravated felony" applies only to "actions taken on or after the date of the enactment of [IIRIRA]." Park argues that the amended definition should not apply to her because the INS initiated deportation proceedings against Park (by issuing an OSC) on August 29, 1996, one month before IIRIRA was signed into law. We have interpreted "actions taken" to include actions taken by the BIA on appeal, although not actions taken by a United States Court of Appeals. *Ortiz v. INS,* 179 F.3d 1148, 1155–56 (9th Cir.1999); *Valderrama–Fonseca v. INS,* 116 F.3d 853, 856 (9th Cir.1997). The BIA issued its final order in Park's appeal on November 14, 1997, and thus the amended definition applies to her.

## CONCLUSION

Park was convicted of involuntary manslaughter—a "crime of violence" under our decision in *Springfield*—and was sentenced to a prison term greater than one year. Thus, her conviction falls within the amended definition of "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F). Accordingly, we must dismiss her petition for lack of jurisdiction.

PETITION DISMISSED.