**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN JOSE MARTINEZ-MADERA,
                    *Petitioner,*

            v.

ERIC HOLDER, JR., Attorney
General,
                    *Respondent.*

No. 06-73157

Agency No.
A14-647-093

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 17, 2008—San Francisco, California

Filed March 16, 2009

Before: Stephen S. Trott and Sidney R. Thomas,
Circuit Judges, and Michael R. Hogan,* District Judge.

Opinion by Judge Trott;
Dissent by Judge Thomas

---

*The Honorable Michael R. Hogan, United States District Judge for the
District of Oregon, sitting by designation.

## COUNSEL

Paul S. Jasper, Katherine Morgan, and Katherine A. Sullivan, Leboeuf, Lamb, Greene & MacRae LLP, San Francisco, California, for the petitioner.

Andrew Oliveira, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

TROTT, Circuit Judge:

Is an unnaturalized person (1) born in Mexico, (2) to unwed Mexican citizen parents, (3) whose mother later married in Mexico a United States citizen, who treats that person as his son, and (4) who with his family moves to the United States, a citizen of the United States? The answer according to the law is "no."

**I**

**OVERVIEW**

Juan Jose Martinez-Madera petitions for review of a decision of the Board of Immigration Appeals ("BIA"), dismissing his appeal from a final order of deportation. Petitioner contends he is a United States citizen by virtue of his stepfather's United States citizenship and therefore is not deportable under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony. We have jurisdiction under 8 U.S.C. § 1252(b)(5)(A), and must determine whether INA § 301(g), 8 U.S.C. § 1401(g) requires at least one of a person's parents to be married to a U.S. citizen at the time of the petitioner's birth. We hold that it does, and so deny the petition.

**II**

**BACKGROUND**

Petitioner was born in Mexico in January 1953. His biological parents were both Mexican citizens and were never married. Six months after Petitioner was born, his mother Thomasa Madera ("Madera") met and began a relationship with Jesus Gonzalez ("Gonzales"), a United States citizen.

The couple married in February 1960 and, in December 1965 moved with Petitioner and his half-siblings to California. Petitioner has lived there ever since. The record does not contradict Petitioner's assertion that since he was six months old, Gonzalez has held Petitioner out and treated him as his son. However, Gonzalez never legally adopted Petitioner. Petitioner's mother became a naturalized citizen in 1995. By that time, Petitioner was forty-three years old. There is no evidence Petitioner made any effort to become naturalized.

In October 1996, Petitioner pled nolo contendere to attempted murder under circumstances that involved domestic violence with a firearm. He served an enhanced eight-year criminal sentence. He was released on September 22, 2005. On September 8, 2005, removal proceedings were initiated against Petitioner on the ground that he was deportable as an aggravated felon under INA § 237(a)(2)(A)(iii). After a merits hearing, the Immigration Judge found that Petitioner was not a U.S. citizen and that the government had proven by clear and convincing evidence that he was deportable as an aggravated felon.

On appeal to the BIA, Petitioner argued that he derived U.S. citizenship when his stepfather, Gonzalez, allegedly legitimated him as his son "in accordance with California's legitimation statute." The BIA reviewed Petitioner's case de novo and dismissed his appeal. After reviewing the facts, the relevant statutory framework, and our decisions in *Scales v. I.N.S.*, 232 F.3d 1159 (9th Cir. 2000), and *Solis-Espinoza v. Gonzales*, 401 F.3d 1090 (9th Cir. 2005), the BIA concluded that Petitioner had not carried his burden to establish U.S. citizenship. The BIA provided a thoughtful analysis of Petitioner's argument:

> The court's decision in *Scales v. INS*, involved a child who was born to a non-citizen woman who was married at the time of the child's birth to a United States citizen. That man accepted the child and acted

as his father, even though he was not the biological father of the child. The court observed in *Scales* that while the "blood relationship" requirement in 8 U.S.C. § 1409 applied to an illegitimate child, the requirement applied *only* to an illegitimate child and that it did not apply to someone who was not born "out of wedlock." The court determined that the respondent in that case was not illegitimate, since he was "born to parents who were married at the time of his birth," even though the husband in that married couple was not the child's biological father. Thus, the court concluded that § 1409 did not apply to him, and then determined that the respondent qualified for United States citizenship under § 1401, despite the lack of a blood relationship between the child and the United States citizen parent, since the statute did not require a blood relationship for citizenship, other than the requirement under § 1409 applicable only to a child born out of wedlock. The court further recognized in *Solis-Espinoza v. Gonzales,* that there should be no distinction on the issue of legitimation, where an individual such as the respondent in the case before us, who was acknowledged and accepted into the family by the mother's United States citizen husband, and was otherwise treated as if he were a legitimate child, and adopted as such; and the situation in *Scales v. INS*, where the father of an illegitimate child acknowledges and with the consent of the United States citizen spouse, brings the child into the family; and concluded that public policy dictates that in both instances such child is deemed for all purposes legitimate from the time of its birth.

However, notwithstanding the foregoing discussion, we find the respondent does not benefit from the Ninth Circuit decisions in either *Solis-Espinoza v. Gonzales*, or *Scales v. INS*. As noted above, in

both *Solis-Espinoza* and *Scales*, the court found that there was an existing marital relationship between one of the biological parents and the stepparent at the time the child was born so that the child was not considered to be illegitimate or born out of wedlock and was therefore not barred from establishing citizenship under 8 U.S.C. § 1401(g). In contrast, in the respondent's case, the respondent's natural parents were both unmarried and Mexican citizens at the time of the respondent's birth, and the respondent's mother did not marry his United States citizen stepfather until 1960 seven years after he was born. Consequently, he may not benefit from those decisions.

(Internal citations omitted). The BIA thus concluded that Petitioner was not entitled to derivative citizenship and was therefore removable as an aggravated felon under INA § 237(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(U). We agree.

# III

# DISCUSSION

## Standard of Review

We review de novo a claim of citizenship. *Solis-Espinoza*, 401 F.3d at 1092. Because the BIA's review was de novo, our "review is limited to the decision of the BIA." *Scales*, 232 F.3d at 1162.

## Analysis

"There are 'two sources of citizenship, and two only: birth and naturalization.' " *Miller v. Albright*, 523 U.S. 420, 423 (1998) (citing *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898). "Evidence of foreign birth . . . gives rise to a rebuttable presumption of alienage, and the burden then shifts to the petitioner to prove citizenship." *Scales*, 232 F.3d at

1163. " 'The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth.' " *Id.* at 1162 (citing *United States v. Viramontes-Alvarado*, 149 F.3d 912, 915 (9th Cir. 1998)) (quoting *Ablang v. Reno*, 52 F.3d 801, 803 (9th Cir. 1995)) (quoting *Runnett v. Shultz*, 901 F.2d 782, 783 (9th Cir. 1990)).

[1] In both *Scales* and *Solis-Espinoza*,[1] one of the petition-

---

[1] The text of 8 U.S.C. §§ 1401 and 1409 was not amended in any relevant way between 1952 and 1986. Thus, we interpreted the same version of these sections in *Scales*, where the petitioner was born in 1977, and in *Solis-Espinoza*, where the petitioner was born in 1967. *Compare* 232 F.3d at 1161 *and* 401 F.3d at 1091.

Section 1401(a)(7), Nationals and Citizens of the United States at birth, provides in relevant part as follows:

> (a) The following shall be nationals and citizens of the United States at birth:
>
> > . . . [paragraphs (1) through (6)]
> >
> > (7) A person born outside the geographical limits of the United States . . . of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States . . . for a period or periods totaling not less than ten years, . . . .

Section 1409 provides in relevant part:

> *Children born out of wedlock*
>
> (a) The provisions of paragraph (c), (d), (e), and (g) of section 1401 of this title, and of paragraph (2) of section 1408 of this title, shall apply as of the date of birth to a person born out of wedlock if—
>
> > (1) a blood relationship between the person and the father is established by clear and convincing evidence,
> >
> > (2) the father had the nationality of the United States at the time of the person's birth,
> >
> > (3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and

er's biological parents was married to a U.S. citizen at the time of the petitioner's birth. *See Scales*, 232 F.3d at 1161-62 (biological mother married to citizen stepfather at time of petitioner's birth); *Solis-Espinoza*, 401 F.3d at 1091 (biological father married to citizen stepmother at time of petitioner's birth). We have not yet addressed the scenario where neither of the petitioner's parents were citizens at the time of his birth, and, as here, the petitioner claims to have derived citizenship under § 1401 when, subsequent to the petitioner's birth, his or her biological non-citizen parent simply married a U.S. citizen.

As recognized by the BIA, *Solis-Espinoza* and *Scales*, upon which Petitioner relies, are manifestly distinguishable and thus not controlling. *See* 401 F.3d 1090; 232 F.3d 1159. In each case, the person claiming citizenship was born into a marital relationship *between a citizen* and an alien. In contrast, Martinez-Madera was born in Mexico of unwed Mexican parents, *neither* of whom was married to a United States citizen at the time of Martinez-Madera's birth.

**[2]** We agree with the Fifth Circuit's resolution of a case with similar facts. In *Marquez-Marquez v. Gonzales*, 455 F.3d 548 (5th Cir. 2006), that court held that a person born of unwed Mexican parents in Mexico did not become a United States citizen by virtue of her later adoption by a United States citizen, who was married to neither of her parents at the

---

(4) while the person is under the age of 18 year—

(A) the person is legitimated under the law of the person's residence or domicile,

(B) the father acknowledges paternity of the person in writing under oath, or

(C) the paternity of the person is established by adjudication of a competent court.

8 U.S.C. § 1409(a).

time of her birth. Our sister circuit properly distinguished *Scales* and *Solis-Espinoza*, and quoted the following from an unpublished decision of our own circuit: "Crider was born of parents neither of whom were or are citizens of the United States. He could not have been a citizen 'at birth.' There is no conceivable way to place him within the reach of § [1401]." *Id.* at 558-559, & n.22 (quoting *Crider v. Ashcroft*, 74 Fed. Appx. 729-30 (9th Cir. 2003)) (unpublished) (citing *I.N.S. v. Pangilinan*, 486 U.S. 875 (1988)).

Petitioner relies on California's legitimation statute, Cal. Civ. Code § 230 (1872) (since repealed by Stats. 1975, c. 1244, p. 3196, § 8), to support his argument, claiming that under *Solis-Espinoza*, "he, as a legitimate son, was not 'born out of wedlock,' " and that because he was not 'born out of wedlock,' *Scales* and *Solis-Espinoza* mandate that he deserves citizenship from his stepfather, Gonzales. We find this argument unconvincing, for two reasons.

**[3]** First, former Cal. Civ. Code § 230 applies only to fathers legitimating their illegitimate *biological* children. The statute does not apply to stepfathers informally adopting stepchildren. How do we know this? Out of the mouth of the California Supreme Court itself. In *Blythe v. Ayres*, 31 P.915 (Cal. 1892), that court held that former Cal. Civ. Code § 230 was a legitimization statute relating to persons "where the blood relation exists." *Id.* at 916. *See also In re Lund's Estate*, 159 P.2d 643, 654 (Cal. 1945) ("[T]here is a natural and basic difference between the adoption of blood strangers and the adoption by legitimation of a natural child." (citing *Blythe*, 31 P. 915)).

Second, Petitioner's authority does not hold that an alien parent who is unmarried at the time of the birth of a person who later claims citizenship may be deemed to have been married to a citizen at the time of birth.

**[4]** As for § 1409, that path to citizenship would require a blood relationship between Petitioner and Gonzales, which

does not exist. As we said in *Scales*, "Moreover, § 1409 clearly was enacted 'at least in part, to ensure that a person born out of wedlock who claims citizenship by birth *actually shares a blood relationship* with an American citizen.' " 232 F.3d at 1164 (quoting *Miller*, 523 U.S. at 435) (emphasis added). *See also Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53 (2001) (describing § 1409 as a statute requiring a blood relationship, either by birth or by legitimation). Furthermore, the Board's determination to this effect is entitled to *Chevron* deference. *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

The dissent claims that "one would be hard-pressed to come up with a logical reason" to explain this result. Beyond those reasons articulated throughout this opinion, we would add only that one would be even more "hard-pressed" to come up with a logical reason to explain the dissent's desired result — that a person born out of the country to two unwed non-citizen parents can derive citizenship "by birth" from a subsequent U.S. citizen stepfather — is not an untenable and paradoxical reading of § 1401's requirement that one be born in wedlock to a U.S. citizen to derive citizenship from that parent.

## IV

## CONCLUSION

**[5]** The foregoing leads to the unsurprising conclusion that Petitioner, born to two unwed non-citizen parents, cannot be deemed "born in wedlock" under § 1401. And, because there is no blood relation between Petitioner and Gonzalez, his citizen stepfather, he cannot meet his burden to prove citizenship under § 1409. *See Scales*, 232 F.3d at 1164; *Solis-Espinoza*, 401 F.3d at 1093. Finally, because it is undisputed that he was convicted of attempted murder, we conclude that Petitioner is removable under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(U).

As in the case of *Tuan Anh Nguyen*, Petitioner's blocked path to citizenship is "due to the serious nature of his criminal offense[ ], not . . . to any supposed rigidity or harshness in the citizenship laws." *Id.* at 71. Among other options, the naturalization door was open to him, but he did not elect to pass through it, choosing instead serious antisocial conduct that led him to prison.

**Petition DENIED.**

---

THOMAS, Circuit Judge, dissenting:

The majority concludes that a child raised from the age of six months by a non-biological citizen father is not a citizen. Our case law, the governing federal and state statutes, and a proper application of the principles of cooperative federalism compel a different conclusion. Thus, I must respectfully dissent.

I

Juan Jose Martinez-Madera moved to the United States when he was six years old and has now lived here for over forty years. Martinez-Madera's mother began a relationship with Jesus Gonzales, the man Martinez-Madera regards as his father, when Martinez-Madera was an infant. The IJ found it undisputed that "since [Martinez-Madera]'s age of 6 months Mr. Gonzales . . . has held out that [Martinez-Madera] is to be his son and addresses him and adopted him into the family . . . . He has always held [Martinez-Madera] out to be a son and part of the family." Martinez-Madera's parents had six biological children together between 1954 and 1966. They married in 1960. Throughout his entire childhood, Martinez-Madera lived with his parents and siblings as a family unit. Gonzales provided for the entire family and publicly held himself out as Martinez-Madera's father.

Now, Martinez-Madera claims derivative citizenship through Gonzales, a United States citizen. He cites our cases *Scales v. INS*, 232 F.3d 1159 (9th Cir. 2000), and *Solis-Espinoza v. Gonzales*, 401 F.3d 1090 (9th Cir. 2005), which establish that a person of foreign birth may derive citizenship through a non-biological U.S. citizen parent under 8 U.S.C. § 1401 (1964), so long as the person was not born "out of wedlock." In both *Scales* and *Solis-Espinoza*, we looked to state law to determine whether the person was born in or out of wedlock.

Under California law, Martinez-Madera was clearly born in wedlock and thus derives United States citizenship from his father. The majority ignores the precedent set by *Scales* and *Solis-Espinoza* and in doing so contradicts established public policy and an express provision of the Immigration and Nationality Act ("INA").

## II

In *Scales*, we first had the opportunity to consider whether a person of foreign birth may derive U.S. citizenship through a non-biological parent. We examined the two relevant statutory provisions — 8 U.S.C. § 1401 and 8 U.S.C. § 1409 — and held that § 1401 does not "require a blood relationship between a person born outside the United States and his U.S. citizen parent." 232 F.3d at 1161. We observed that § 1401 applies if the person claiming citizenship was born "in wedlock," while § 1409 applies if the person was born "out of wedlock." Thus, we proceeded to determine whether the petitioner was born in or out of wedlock. To make this determination, we looked to the relevant state law of the petitioner's domicile. Indeed, we recognized that the INA provides that a child can be "legitimated under the law of the child's residence or domicile." *Scales*, 232 F.3d at 1163 (quoting 8 U.S.C. § 1101(c)(1) (1976)). We noted that the petitioner and his family had resided in the state of Washington since the petitioner was 11 years old and that Washington state law pro-

vided at the time that "[a] man is presumed to be the natural father of a child if: (a) He and the child's natural mother are or have been married to each other and the child is born during the marriage." *Id.* at 1163 and n.7 (quoting Wash. Rev. Code § 26.26.040(1)(a)). Applying this law, we concluded that the petitioner "is 'legitimate' by virtue of his parents being married at the time of his birth," *id.* at 1164, and held "that Petitioner acquired citizenship at birth under § 1401," *id.* at 1166.

In *Solis-Espinoza*, we confronted "a situation much like [that of *Scales*], but with the genders of the parents reversed." 401 F.3d at 1093. As in *Scales*, we looked to state law to determine whether the petitioner was born in or out of wedlock. We observed that "[t]he relevant state of domicile for Solis-Espinoza and his father was California," *id.* at 1093, and thus applied a California state law in effect at the time. That law provided:

> The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth.

Cal. Civ. Code § 230 (1872). Applying that statute, we held: "Under the law of California at the relevant time . . . Solis-Espinoza was 'for all purposes legitimate' from the time of his birth. Since he was not 'born out of wedlock,' under our decision in *Scales* . . . he is entitled to be recognized as a citizen under § 1401." *Solis-Espinoza*, 401 F.3d at 1094.

Section 230 applies to Martinez-Madera as well. Martinez-Madera's non-biological father publicly acknowledged and treated Martinez-Madera as his own son since the age of six months. Section 230 therefore requires this Court to treat

Martinez-Madera as legitimate *from the time of his birth*. Thus, § 1409 does not apply and Martinez-Madera derives United States citizenship through his non-biological father pursuant to § 1401.

The majority attempts to distinguish *Scales* and *Solis-Espinoza* on the ground that Martinez-Madera was born "out of wedlock" because his parents were not married at the time of his birth.[1] However, this difference does not vitiate the requirement of *Scales* and *Solis-Espinoza* that we look to state law to determine whether the petitioner is legitimately the child of the citizen parent.

## III

In looking to state law, *Scales* and *Solis-Espinoza* adhered to an express provision of the INA. We have previously held:

> Legitimacy is a legal concept, and the law determines whether and under what circumstances a child it has denominated illegitimate may become legitimate. The Immigration and Nationality Act provides that a child who is unmarried and under twenty-one years of age *can be legitimated under the law of the child's residence or domicile*, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

*Burgess v. Meese*, 802 F.2d 338, 340 (9th Cir. 1986) (empha-

---

[1]The majority cites a Fifth Circuit case in support of its conclusion. *See Marquez-Marquez v. Gonzales*, 455 F.3d 548 (5th Cir. 2006). Aside from being non-binding on this Court, *Marquez-Marquez* does not explicitly evaluate whether Marquez-Marquez was born into wedlock under the relevant state law.

sis added) (citing 8 U.S.C. § 1101(b)(1)(C) (1983)); *see also Scales*, 232 F.3d at 1163 (quoting an earlier version of the same statute, 8 U.S.C. § 1101(c)(1) (1976), containing identical language).

Congress has expressly provided that a child who is considered "legitimated" under applicable state law is also to be considered "legitimated" for the purposes of immigration law. The majority ignores this express provision.

IV

Denying Martinez-Madera's derivative citizenship claim also contravenes the public policy considerations we have traditionally respected in such cases.

First, as we observed in *Solis-Espinoza*: "Public policy supports recognition and maintenance of a family unit. The INA was intended to keep families together. It should be construed in favor of family units and the acceptance of responsibility by family members." 401 F.3d at 1094. *See also* H.R. Rep. 85-1199, pt. 2, *reprinted in* 1957 U.S.C.C.A.N. 2016, 2021 (the INA "implements the underlying intentions of our immigration laws regarding the preservation of the family unit."). Martinez-Madera lived with his parents and siblings as a family unit throughout his entire childhood and has resided in the United States for over forty years. To deny him derivative citizenship and deport him to Mexico is unjust, illogical, and does nothing to further U.S. immigration policy.

Second, the majority's interpretation violates the principles of cooperative federalism. "Family relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 435(1979); *see also H.C. ex rel. Gordon v. Koppel,* 203 F.3d 610, 613 (9th Cir. 2000) (noting the importance of the state interest in family relations). Federal courts have no general jurisdiction over domestic relations, *Ankenbrandt v. Richards*, 504 U.S. 689, 697-701(1992), while "state courts have a spe-

cial expertise and experience" in family relations, *H.C.*, 203 at 613 (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979)).

The best method of advancing these two policy objectives is to hold—consistent with the INA, *Solis-Espinoza*, and *Scales*—that state law governs determinations of legitimacy.

V

For all of these reasons, I would hold that courts should look to state law to determine whether a person may properly be considered "legitimate" or "born in wedlock" for the purposes of § 1401. Applying state law, I would hold that Martinez-Madera is "for all purposes legitimate" under Cal. Civ. Code § 230[2] and is entitled to derivative citizenship under § 1401.

Because the majority has concluded otherwise, I must respectfully dissent.

---

[2]The majority additionally argues that even if California law should determine whether Martinez-Madera was born out of wedlock, he has not met the requirements of Cal. Civ. Code § 230 because that statute is applicable only to biological fathers. This argument relies on dicta from an 1892 California Supreme Court case. Although we normally follow a state supreme court's interpretation of a state statute, California caselaw simply does not answer the question of whether Cal. Civ. Code § 230 permits a step-father to legitimize his wife's biological child. Absent clear direction from the California Supreme Court, which we do not have here, there is no compelling reason to interpret the California statute in the manner suggested by the majority.