Robert L. MAGNUSON, personal representative of Charles Vernon Myers, Plaintiff–Appellee,

v.

James BAKER, Secretary of State; United States of America, Defendants–Appellants.

No. 88–4180.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1989.

Decided Aug. 15, 1990.

William H. Beatty, Asst. U.S. Atty., Spokane, Wash., for defendants-appellants.

Leslie R. Weatherhead, Witherspoon, Kelley, Davenport & Toole, Spokane, Wash., for plaintiff-appellee.

Before TANG, HALL and BRUNETTI, Circuit Judges.

TANG, Circuit Judge:

The Secretary of State (the "Secretary") appeals the district court's summary judgment order which rejected the Secretary's attempt to revoke the passport of Charles Vernon Myers ("Myers"). We affirm.

## FACTS AND PROCEEDINGS

Myers was born in Canada in 1912. In the mid 1970's, Myers fled Canada after Canadian authorities convicted him of tax evasion. Myers relocated in the United States.

On October 6, 1985, Myers applied to the State Department for a United States passport based on his claim that he was a United States citizen. To support his citizenship claim, Myers attached a ten-page statement and eighteen exhibits to his application. Myers based his claim on derivative citizenship; that is, his father was a naturalized citizen and therefore Myers was entitled to citizenship as his son.[1] On November 26, 1985, a passport examiner for the Seattle Passport Agency rejected Myers' application. Myers requested reconsideration of this determination and offered additional arguments why a passport should issue to him.

The Acting Regional Director of the Seattle Office (and the highest ranking officer of the Seattle passport office), Paul Bigelow, reviewed Myers' reconsideration request. Bigelow had come to the Seattle passport office in 1983 after sixteen years in the foreign service. As a foreign officer, he had been posted in Mexico City, Mexico; Baja California, Mexico; Matamoros, Mexico; Toronto, Canada; and Frankfurt, Germany. During Bigelow's postings

---

1. We note that whether in fact the passport office correctly decided Myers' citizenship is not at issue in this appeal. Thus, the facts presented about the merits of his citizenship claim are intended solely as background information.

Myers contended that he was a United States citizen because his father was a United States citizen. Myers' grandparents, Gustav and Selina Meier, and his father, Amil Meier, left their native Switzerland and immigrated to the United States in 1887. In 1889, Gustav filed a naturalization petition. In 1893, Gustav took part in the land rush for the Cherokee strip of the Oklahoma territory. The Cherokee strip was open to settlement only to United States citizens and those who declared their intention to become citizens. Amil lived in Oklahoma with his family until 1902. That year he bought land elsewhere in Oklahoma. In 1903, Amil changed the spelling of his last name to "Myers." In December 1907, Amil moved to Canada. According to Canadian officials, in 1940 Amil became a naturalized citizen of Canada. Those Canadian naturalization records also indicate

Amil had declared himself a United States citizen.

Myers claimed that Amil could have become a United States citizen in one of three ways: (1) through Gustav if he had completed the application process started in 1889 (he had a compelling reason to do so, because only citizens could hold patents to a homestead); (2) by Amil's own efforts (he, like his father, had a compelling reason to do so, obtaining a patent for any homestead); and (3) by reason of Oklahoma's admission to the Union in November 1907 if Amil had (i) filed a declaration of intent to become a United States citizen and (ii) resided in Oklahoma at the time of its admission into the Union.

While circumstantial evidence supports these three means of obtaining citizenship, the documentary evidence was not complete because key records in Oklahoma were incomplete. Thus, the question for the passport office was whether Myers had produced enough circumstantial evidence to show that Amil Myers had obtained citizenship.

abroad, he had acquired wide experience in citizenship issues. In particular, when Bigelow was in Frankfurt, he was responsible for determining the citizenship of children of military families.

Bigelow reviewed all of Myers' evidence. He also engaged in additional research. On July 7, 1986, Bigelow concluded that Myers had proved that he was a United States citizen and issued Myers a passport.

On December 9, 1986, an Immigration and Naturalization Service ("INS") official wrote a letter disapproving of the passport's issuance. The letter also stated the INS was attempting to deport Myers. On March 23, 1987, a State Department official in the Office of Citizenship Appeals in Washington, D.C. wrote to Myers asserting that the passport had been issued in error. The State Department demanded the passport's immediate return. The State Department threatened Myers with $2,000 in fines and five years imprisonment under 18 U.S.C. § 1544 if he did not return the passport.

Myers' counsel exchanged several letters with the Office of Citizenship Appeals. On May 4, 1987, Myers' counsel requested a hearing. On May 13, 1987, the Office of Citizenship Appeals rejected Myers' request.

On July 28, 1987, Myers filed suit in district court.[2] On May 31, 1988, Myers moved for summary judgment. Myers argued that once the State Department issues a passport, it has no statutory authority to revoke that passport unilaterally.

On July 19, 1988, the district court granted summary judgment in favor of Myers.

The district court concluded that 22 U.S.C. § 2705, which states that a passport has "the same force and effect" as certificates of naturalization or citizenship issued by the Attorney General or a court of naturalization jurisdiction, would be nullified if the Secretary could revoke a passport on a whim. The district court also concluded that in order for section 2705 to fulfill congressional intent, a holder of a passport must be able to challenge a revocation *before* that action occurs. The district court determined that a State Department regulation, 22 C.F.R. § 51.80, which prevents administrative review of citizenship questions, contradicts 22 U.S.C. § 2705.[3] Finally, the district court decided that none of the circumstances listed in 22 C.F.R. § 51.70 that justify non-issuance of a passport apply in this case.

█ The Secretary has filed a timely appeal.[4]

## DISCUSSION

### Background

As the district court observed, this case is a result of Congress' enactment of 22 U.S.C. § 2705. In relevant part, 22 U.S.C. § 2705 provides:

The following documents shall have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction:

(1) A passport, during its period of validity (if such period is the maximum

---

2. In late December 1987, Myers traveled to Canada to visit his dying wife. Canadian authorities arrested Myers on the tax evasion conviction and incarcerated him. When Myers was eligible for release, Canadian officials sought assurance that he could return to the United States. The INS refused to readmit Myers. Myers sought injunctive relief to allow his return. On March 18, 1988, the district court enjoined the INS from barring Myers' entry.

3. 22 C.F.R. § 51.80 states that the administrative remedies for an adverse action are governed by 22 C.F.R. §§ 51.81 to 51.89. However, when the issue is citizenship, section 51.80 precludes review.

4. After we submitted this case for decision, Myers died. The Secretary requested that we dismiss this case as moot because of Myers' death. We decline to do so because various legal interests may still turn on whether Myers could retain his passport. For example, there are tax consequences to Myers' estate that turn on citizenship. In addition, Myers' children have a claim to derivative citizenship through Myers' citizenship. Because this case is not moot, we have granted Myers' counsel's motion to substitute Robert L. Magnuson, Myers' personal representative, as plaintiff-appellee.

period authorized by law), issued by the Secretary of State to a citizen of the United States.

\* \* \* \* \* \*

22 U.S.C. § 2705.

The parties agree that section 2705 has had two consequences which set the stage for the conflict in this case. First, by section 2705, Congress has vested the power in the Secretary of State to decide who is a United States citizen. Prior to the enactment of section 2705, only the Attorney General or a naturalization court could determine who is a citizen of the United States. Congress granted the Attorney General and naturalization courts the power respectively to issue certificates of citizenship or naturalization as conclusive evidence of their determinations. By deeming passports conclusive evidence of citizenship, Congress has thus also granted power to the Secretary of State to determine who is a citizen.[5]

Second, through section 2705, Congress authorized passport holders to use the passport as conclusive proof of citizenship. The statute plainly states that a passport has the same force and effect as a certificate of naturalization or citizenship issued by the Attorney General or by a naturaliza-

tion court. The holders of these other documents can use them as conclusive evidence of citizenship.[6] Therefore, so can a holder of a passport.[7]

Given these two effects of section 2705, Myers' passport had significant consequences. Because the passport provided conclusive evidence of citizenship which the INS could not collaterally attack, Myers' passport prevented the INS from deporting him.

While the Secretary has no qualms about accepting his new powers under section 2705, he asserts in this appeal that Congress granted these new powers without limitations on his power to revoke a passport. Though the Secretary has raised a number of different issues on appeal, our central task in this appeal is to determine whether Congress by section 2705 has placed any limits on the Secretary's power to revoke a passport which is evidence of citizenship.

### Issues on Appeal

1. Section 2705's Effect on the Secretary's Revocation Power

■ The Secretary asserts that 22 U.S.C. § 2705 neither prohibits him from revoking a passport on the basis of "second

---

5. Congress' vesting of the power in the Secretary of State to determine citizenship flows naturally from the State Department's duties. For example, Bigelow, as a foreign service officer in various embassies abroad, worked on many different citizenship issues and necessitates that the State Department have well-developed expertise in resolving citizenship issues.

6. A certificate of naturalization or of citizenship issued by a naturalization court is simply a record of the court's determination of the question of citizenship. As a record of a final court decision, a certificate is conclusive evidence of the court's determination of the litigated issue, i.e., citizenship. Because a certificate is conclusive evidence of citizenship, if a holder of a certificate from a naturalization court presented the certificate to the Secretary in order to obtain a passport, the Secretary could not relitigate the citizenship issue. The Secretary could question only the certificate's authenticity, i.e., whether the certificate is a forgery.

When the Attorney General issues a certificate of naturalization or citizenship, the holder can also use that certificate as conclusive proof of citizenship. Congress in 8 U.S.C. § 1443(e) has

provided that a certificate issued by the Attorney General has the same preclusive effect on relitigation of citizenship as a certificate issued by a naturalization court. 8 U.S.C. § 1443(e) states that: "A certificate of naturalization or of citizenship issued by the Attorney General under the authority of this subchapter shall have the same effect in all courts, tribunals, and public offices of the United States, at home and abroad, of the District of Columbia, and of each state, territory, and outlying possession of the United States, as a certificate of naturalization or of citizenship issued by a court having naturalization jurisdiction."

7. The INS has recognized that 22 U.S.C. § 2705 renders a passport conclusive evidence of citizenship. *See Matter of Villanueva,* Interim Decision # 2968 (BIA 1984). In *Villanueva,* the petitioner sought to obtain a preferential visa for his spouse on the basis of his United States citizenship. He proved his citizenship with a passport. *Id.* at 2. The INS held that 22 U.S.C. § 2705 made a passport conclusive proof of citizenship. *Id.* at 4. Thus, the INS could not collaterally attack the petitioner's citizenship. *Id.*

thoughts," nor prevents him from revoking a passport without giving the passport holder an opportunity to be heard. We disagree.

"In construing statutes in a case of first impression," as here, "we first look to the language of the controlling statutes, and second to legislative history." *Central Montana Elec. v. Administrator of the Bonneville Power Admin.*, 840 F.2d 1472, 1477 (9th Cir.1988). "Absent a clearly expressed legislative intent to the contrary, the plain language must ordinarily be regarded as conclusive." *Id. See also United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, ——, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (the "plain meaning of legislation should be conclusive"). Because there is no legislative history of note, we rely solely on the plain meaning of the statute.[8]

We conclude that the plain meaning of section 2705 contradicts the Secretary's construction of the statute. Section 2705, grants no revocation power to the Secretary and certainly none greater than could be exercised by the Attorney General or a naturalization court. As a result, assuming the Secretary can revoke a passport, he can do so only if he (a) gives the passport holder an opportunity to be heard prior to revocation, and (b) seeks revocation on the basis of fraud, misrepresentation, or some other exceptional ground.

■ The starting point for our analysis is the language of section 2705. The key language of section 2705 is its requirement that a passport must be given the "same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney

General or by a court having naturalization jurisdiction."

We read this language as a clear instruction from Congress to treat passports in the same manner as certificates of citizenship or certificates of naturalization in all respects. This conclusion is compelled by the common meaning of the words that Congress has used.[9] First, using "same" and "force" together means that passports have in every way the legal validity of the reference certificates. Second, the combination of the terms "same" and "effect" instructs us that passports produce in every way the resultant conditions of certificates. Thus, passports must be treated in the same manner as those certificates in all respects. To determine then how the same force and effect language limits the Secretary's power to revoke, we must examine how Congress has limited the Attorney General's and naturalization courts' powers to revoke.

### (i) Revocation by the Attorney General

Congress has sharply limited the Attorney General's power to revoke certificates of naturalization. Under 8 U.S.C. § 1453, the Attorney General has the power to revoke only when "it shall appear to the Attorney General's satisfaction that such document or record was illegally or fraudulently obtained from, or was created through illegality or by fraud practiced upon, him." However, exercise of this power to revoke requires the Attorney General to grant the holder of the certificate of naturalization *at least sixty days* to show cause why revocation should not occur. *See* 8 U.S.C. § 1453.

---

**8.** Apparently, the enactment of the statute was not controversial. The legislative materials reveal only a written response from a State Department official to a written question from Congressman Dante B. Fascell. In that response, the State Department official stated that the Secretary as well as the INS supported the legislation to make a passport evidence of citizenship. *Authorizing Appropriations for Fiscal Years 1982 and 1983 for the Department of State, the International Communication Agency, the Board for International Broadcasting and the Inter–American Foundation before the Sub-*

*comm. on International Operations of the House Committee on Foreign Affairs*, 97th Cong., 1st Sess. 117 (1981) (written statement of the Hon. Diego Asencio, Assistant Secretary for Counsular Affairs, Department of State.)

**9.** According to Webster's Third New International Dictionary, "same" as used here means "resembling in every way." The same dictionary's relevant definition of "force" is "legal validity." The Webster definition of "effect" as used here is "a resultant condition."

Two aspects of section 1453 merit highlighting. First, Congress has provided that the holder of a certificate of naturalization must be heard *before* revocation. Second, Congress has limited the grounds justifying revocation to illegality or fraud. There is no power given the Attorney General to revoke the certificate merely because he or she has "second thoughts" about the initial issuance of the document. This limitation reflects the high value of citizenship. Given all the rights that stem from citizenship, Congress would rationally limit the withdrawal of proof of citizenship to only the most serious grounds.[10]

### (ii) Revocation by a Naturalization Court

A naturalization court has authority to revoke its citizenship judgment. *See* 8 U.S.C. § 1451. However, Congress has strictly limited the grounds which support revocation. The only grounds are proof of concealment of a material fact, willful misrepresentation, or procurement in violation of law. 8 U.S.C. § 1451(a).[11] Thus, as in section 1453, Congress in section 1451 has precluded revocation merely on the basis of having "second thoughts." Also, as does section 1453, section 1451 provides the holder of the document a chance to challenge the revocation before it takes effect. 8 U.S.C. § 1451(b).[12]

As discussed, the "same force and effect" language of 22 U.S.C. § 2705 requires the Secretary of State to treat passports in the same manner as certificates of citizenship or naturalization in all respects. Thus, after reviewing Congress' limitations on the Attorney General's and naturalization courts' powers to revoke certificates, we conclude that 22 U.S.C. § 2705 mandates two limitations upon the Secretary's power to revoke a passport. First, the Secretary must grant a passport holder an opportunity to be heard *before* he revokes a passport, at least where as here the Secretary has adjudicated the issue of citizenship. Second, section 2705 necessarily limits the grounds for revoking a passport to those expressed in sections 1451 and 1453. If we were to rule otherwise, we would accord those who use their passport as evidence of their citizenship less protection than those who use other documents as evidence denoting citizenship. Such a difference in treatment would contradict the "same force and effect" language of section 2705.

Because the Secretary's construction of section 2705 contradicts the limitations that

10. In this case, Myers sought citizenship for its most basic right, the right to remain in the United States. The INS could not deport Myers once he had the passport to present as conclusive evidence of citizenship. However, we note that citizenship confers a myriad of other rights on its holder. For example, citizenship frees one from the possibility of discrimination by Congress on the basis of alienage. *See, e.g., Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (Congress may restrict alien participation in the Medicare insurance program).

11. 8 U.S.C. § 1451(i) grants courts the inherent authority to set aside judgments for any reason cognizable under Federal Rule of Civil Procedure 60. Because Rule 60 allows for reopening of final judgments in only a few exceptional circumstances, we doubt that Rule 60 widens the grounds for revocation. Moreover, we agree with the reasoning of a New Jersey district court which faced an INS request for revocation under Rule 60. That court stated:

> [T]o allow the precious right of American citizenship to be revoked by such a summary procedure as is sought here [under Rule 60] would debase the value of the right of that

> citizenship and raise serious doubts in any citizen's mind that the law is in accord with the dictates of humanity and justice.

*In re DeRoma,* 603 F.Supp. 127, 131 (D.N.J. 1985).

12. We note that Congress' limitation of grounds for revoking a certificate is consistent with the fact that a certificate is conclusive evidence of citizenship. Because a certificate is a record of a final administrative judgment, the grounds for revocation must be limited. Otherwise, the certificate loses its value as conclusive proof of citizenship.

Moreover, Congress' limitation of the grounds for revocation fits squarely with the basic principle of finality. Once a court makes a final civil determination, it cannot reopen its determination unless it finds exceptional circumstances such as fraud or misrepresentation. *See, e.g.,* Fed.R.Civ.P. 60(b). Because of this limitation, successful collateral attacks upon a civil judgment are rare. Similarly, by limiting revocation of a certificate to cases of fraud, or misrepresentation, Congress has likewise limited successful collateral attacks on citizenship determinations.

statute itself imposes upon his power to revoke a passport, we must reject the Secretary's arguments. We conclude that section 2705 prohibits the Secretary from revoking a passport solely on the basis of "second thoughts," or from denying the passport holder an opportunity to be heard prior to revocation.

### 2. Availability of a Remedy

■ The Secretary argues that Congress has already established two means by which a person like Myers can challenge revocation of a passport. First, under 8 U.S.C. § 1503, a person may challenge an action taken on the ground that a person is a non-citizen. Second, under 8 U.S.C. § 1105a(a)(5), a person subject to a deportation procedure may appeal his or her citizenship claim to a court of appeals.

We conclude that neither of these two alternatives provide the protections that section 2705 mandates. As we have discussed, Congress requires the State Department to give a passport the "same force and effect" as certain other documents denoting citizenship. Honoring this requirement necessitates making available a means of challenging revocation *before* that act occurs. Because both of these other alternatives of testing a revocation arise only *after* the Secretary has revoked the passport, we cannot accept the Secretary's claim that either of these statutes satisfies the due process requirements of section 2705.

### 3. Invalidation of 22 C.F.R. § 51.80

■ The Secretary argues the district court erred when it concluded that 22 U.S.C. § 2705 invalidates 22 C.F.R. § 51.80. Section 51.80 permits the Secretary to revoke a passport on the basis of non-citizenship without providing the passport holder any administrative remedies. The Secre-

tary claims that section 51.80 is consistent with congressional intent and implements 22 U.S.C. § 2705.[13]

We agree with the district court that 22 U.S.C. § 2705 invalidates 22 C.F.R. § 51.80. Section 51.80 permits the Secretary to revoke a passport without giving the passport holder an opportunity to be heard prior to revocation. This contradicts the plain intent of Congress to afford passport holders the same protection as holders of certain other documents of citizenship. Because 22 C.F.R. § 51.80 is antagonistic to 22 U.S.C. § 2705, it must fail. *McNabb v. Bowen*, 829 F.2d 787, 791 (9th Cir.1987).

### CONCLUSION

We affirm the decision of the district court. Through 22 U.S.C. § 2705, Congress has granted the Secretary the power to determine citizenship and to issue a document, a passport, as conclusive evidence of citizenship. Consistent with the interest at stake, Congress has decided the Secretary can revoke a passport evidencing citizenship only (1) after affording the holder an opportunity to be heard and (2) on exceptional grounds such as fraud or misrepresentation. Therefore, we reject the Secretary's attempt to revoke Myers' passport. The Secretary failed to give Myers any opportunity to be heard prior to revocation, and he failed to base his revocation on a permissible ground.

AFFIRMED.[14]

---

13. We note that the Secretary issued regulation 22 C.F.R. § 51.80 well before Congress enacted 22 U.S.C. § 2705. Therefore, section 51.80 is not an implementation regulation as the Secretary claims.

14. The Secretary also argues that the district court erred in granting summary judgment because whether Myers was a citizen is a factual dispute. We disagree. Because we have concluded that the Secretary's power to revoke a passport cannot be based on second thoughts about the citizenship determination, the existence of a factual dispute with respect to Myers' citizenship is irrelevant.