Joel **CONSTANZA**

v.

William **RILEY** et al.

No. CIV.A.03–2414.

United States District Court, E.D. Pennsylvania.

May 1, 2003.

Joel Constanza, pro se.

Stephen Britt, U.S. Attorney's Office, Philadelphia, PA, for U.S.

### *MEMORANDUM*

DALZELL, District Judge.

Before us is Joel Constanza's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. We consider it at some length because it raises the problem of what procedure district courts should follow when presented with a § 2241 petition asserting that a criminal alien deportee is, in fact, a United States "national".

According to the petition, Constanza is a native and citizen of the Dominican Republic who entered the United States twenty years ago and applied for naturalization on October 18, 1996. In 2002, he pleaded guilty in Pennsylvania to three drug-related offenses and served twenty-three months of his forty-eight month sentence.

Constanza's offenses rendered him an aggravated felon within the meaning of 8 U.S.C. § 1101(a)(43)(B), and the former Immigration and Naturalization Service instituted criminal alien removal proceedings. On February 19, 2003, Constanza failed to appear at his removal hearing, and he was ordered deported in absentia pursuant to 8 U.S.C. § 1229a(b)(5).

Constanza contends that he is not a removable criminal alien but is instead a non-citizen "national" of the United States. The Immigration and Nationality Act of 1952 defines a "national" as either a citizen or "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22).[1]

Constanza argues that he is a non-citizen national because he swore an oath of allegiance to the United States as part of the naturalization process. The Government contends that the status of "non-citizen national" is limited to natives of American Samoa and Swains Island, a small, copra-producing[2] atoll in the South Pacific over which the United States extended sovereignty in 1925.[3] *Accord Mil-*

---

**1.** For a provocative and still-timely critique of the definition of nationality in American immigration law, *see* Maximilian Koessler, *"Subject," "Citizen," "National," and "Permanent Allegiance"*, 56 Yale L.J. 58, 67–69 (1946) (arguing that any post-feudal conception of nationality based on permanent allegiance is tautological because permanent allegiance is, at bottom, a synonym for nationality).

**2.** Though Swains Island does not have the Polynesian cultural richness depicted in Niki

Caro's *Whale Rider* (Newmarket Films 2003), it does have a wealth of copra. For those for whom *copra* is not a household word, it is "[t]he dried kernel of the coco-nut, prepared and exported for the expression of coco-nut oil." III *The Oxford English Dictionary* 912 (2d ed.1989).

**3.** According to writer Jane Resture, Swains Island got its present name in 1841 from the

*ler v. Albright*, 523 U.S. 420, 467 n. 2, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (Ginsburg, J., dissenting). In support of Constanza's claim, three courts have held that people other than American Samoans and Swains Islanders may indeed qualify as non-citizen nationals, and they have also deemed an application for naturalization to be evidence of the individual's permanent allegiance to our nation. *See Hughes v. Ashcroft*, 255 F.3d 752, 755–57 (9th Cir. 2001); *United States v. Morin*, 80 F.3d 124, 126–27 (4th Cir.1996); *Shittu v. Elwood*, 204 F.Supp.2d 876, 879–80 (E.D.Pa. 2002).

Colorful as this problem is, we must first survey the metes and bounds of one of the jurisdictional gores created by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") in order to decide the threshold question of whether we can reach the merits of Constanza's nationality claim. The IIRIRA vests jurisdiction over nationality claims in the Court of Appeals, *see* 8 U.S.C. § 1252(b)(5). Moreover, the IIRIRA precludes judicial review of criminal alien removals, *see* 8 U.S.C. § 1252(a)(2)(C), but the Supreme Court has confirmed that district courts have jurisdiction under 28 U.S.C. § 2241 to consider habeas petitions challenging such removals. *See Calcano–Martinez v. INS*, 533 U.S. 348, 351, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001).

Here, Constanza's only recourse was to file a § 2241 petition because he faces removal as a criminal alien, but his petition asserts a nationality claim that can only be heard in the Court of Appeals. The Court of Appeals for the Ninth Circuit has resolved this jurisdictional puzzle by ordering the transfer of the nationality claim from the district court and then hearing that claim in the exercise of its retained jurisdiction to determine, in a criminal alien case, whether the deportee actually is an alien. *Baeta v. Sonchik*, 273 F.3d 1261, 1263–64 (9th Cir.2001); *accord Hussin v. Ashcroft*, No. 01–1239, 2002 WL 31027604, at *1–2 (E.D.N.Y. Sept.12, 2002).

In the absence of binding appellate authority[4] and in deference to the IIRIRA's jurisdictional scheme, we adopt the Ninth

---

captain of the U.S. Exploring Expedition's *Peacock*, who learned about the island from a whaling captain named Swain. On October 13, 1856, New Yorker Eli Hutchinson Jennings landed on the island and founded a coconut plantation. Swains Island became something of a pawn in the imperial chess game of the pre-World War I era. In 1909, the Resident Governor of Britain's Gilbert and Ellice Islands visited the island and demanded an $85.00 tax. Then-owner Eli Jennings, Jr., paid the tax but protested this assertion of British sovereignty. After the United States State Department intervened, Great Britain returned the tax money to Mr. Jennings. *See generally* Jane Resture, *Swains Island, at* http://www.janeresture.com/tokelau_islands/swains.htm. The United States finally extended sovereignty over Swains Island on March 4, 1925. *See* 48 U.S.C. § 1662.

As to its physical endowments, Resture observes that

[t]he island is a ring of sand and coral, a mile and a half east and west, a mile wide, and nowhere more than 20 feet high, surrounding a shallow lagoon, which is only slightly brackish .... The lagoon may be too small for seaplanes; but the island is certainly one of the most beautiful and picturesque under the American flag. Were it not for the mosquitoes and small flies, it would be quite an island paradise.

Resture, *supra*.

4. We adopt this approach mindful that our Court of Appeals will be taking up the jurisdictional conundrum in a pending case, *Merchant v. Ashcroft*, 3d Cir. No. 02–4157. *See* Order of Jan. 14, 2003 (referring to a merits panel the question "[w]hether the District Court erred by concluding that 8 U.S.C. § 1252(b)(5) deprives the District Court of jurisdiction, in the context of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, to determine whether Petitioner is a national or an alien ....").

Circuit's solution to this problem and transfer Constanza's case to our Court of Appeals.

### ORDER

AND NOW, this 1st day of May, 2003, upon consideration of Joel Constanza's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (docket entry # 1) and the Government's response thereto, and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

1. This case is TRANSFERRED to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. § 1631; and

2. The Clerk of Court shall CLOSE this case statistically.