MEMORANDUM OPINION
 

 ELLIS, District Judge.
 

 Petitioner John Bisong Atem (Atem), while a D.C. inmate,
 
 [1]
 
 filed this
 
 pro se
 
 petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 protesting the revocation of his United States passport and resulting detention pending deportation. Named as respondent is John Ashcroft, Attorney General.
 
 [2]
 
 Atem seeks (1) a writ of habeas corpus to obtain release from the custody of the Immigration and Naturalization Service;
 
 [3]
 
 (2) reinstatement of his United States passport; and (3) a declaratory judgment that he is a United States citizen. Respondent timely filed an opposition on September 24, 2003, and Atem filed a reply on November 19, 2003.
 
 [4]
 
 Supplemental briefs were filed by respondent on November 24, 2003. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent’s Motion to Dismiss must be granted.
 

 I.
 

 Atem contends that he is a citizen of the United States, as evidenced by the United States passport issued to him in 1991. Born in Cameroon, Atem entered the United States on May 27, 1988, on a student “F-l” visa. On April 12, 1991, Atem applied for a United States passport with the Department of State Passport Office, claiming he derived United States citizenship from his United States citizen father. On this application, Atem claimed his father was Joseph Kennedy, a United States citizen born on May 5, 1920, in Lynchburg, South Carolina. In support of his derivative citizenship declaration, Atem submitted a copy of Joseph Kennedy’s birth certificate, as well as his own Cameroon birth certificate. Atem’s birth certificate reflected a birth date of April 1, 1967, and listed his father as Joseph Kennedy living in “Lynchburg, United States” and his mother as Dora Atem Ashu of Cameroon, who died on July 10, 1972. Atem stated on his passport application that he learned of his possible United States citizenship in November 1988, when he first spoke with his father. Atem also provided a certifi
 
 *DCCCXXXVII
 
 cate of legitimization of birth purportedly issued in Cameroon on February 28, 1991, and reflecting that his parents were those persons identified on his birth certificate. This certificate further indicated that Joseph Kennedy had provided support for him from May 2, 1967, through March 15, 1971. Based on this information, Atem was issued a United States passport on July 24, 1991, and replacement passports thereafter on May 21, 1999, and May 8, 2000.
 

 Since the 1991 issuance of his United States passport, Atem has resided continuously in Maryland or Washington, D.C. During this time, Atem has operated a variety of businesses relating to aliens and international students. Many of these businesses, including the American Immigration Agency, target aliens seeking immigration assistance for themselves or their family members.
 
 [5]
 
 As a result of Atem’s fraudulent business operations and practices, an arrest warrant was issued for him on April 30, 2002, and a complaint filed with the United States District Court for the District of Columbia, with a superseding indictment filed on September 25, 2002. In that superseding indictment, Atem was charged with seven (7) counts of bank fraud and five (5) counts of immigration fraud. On June 18, 2003, Atem was convicted by a jury on all counts, and is scheduled to be sentenced on March 22, 2004.
 

 During the pendency of this criminal prosecution, a long-term investigation, commenced by the INS in 1994, and continued in 2002 by the BICE, culminated on June 11, 2002, with a finding that Atem had presented false documents in order to obtain his United States passport.
 
 [6]
 
 The INS reported the results of its investigation to the Department of State on June 11, 2002. On June 19, 2002, the Department of State informed Atem that it had revoked his passport based on its finding that Atem was not a United States citizen, and that the passport had been issued in error on the basis of fraudulent documents.
 

 Thereafter, on February 24, 2003, BICE issued Atem a Notice to Appear before an Immigration Judge for removal proceedings. In support of its contention that Atem is not a United States citizen, BICE submitted to the Immigration Judge several documents establishing the following: (i) that Atem is a native and citizen of Came
 
 *DCCCXXXVIII
 
 roon; (ii) that Atem’s United States passport was revoked by the Department of State on June 19, 2002, as it was issued in error; (iii) that Atem had never attempted to become a naturalized United States citizen; and (iv) that Atem’s certificate of legitimization of birth was fraudulent. BICE also submitted a copy of a Paternity Evaluation Report, dated April 23, 2003, reflecting that Joseph Kennedy was not the biological father of Atem.
 
 [7]
 
 And finally, the Immigration Judge was provided with the records of an August 30, 1994, interview with Atem’s purported father, Joseph Kennedy. In this interview, Kennedy stated that he first met Atem at the apartment building where Atem was working as a security guard. According to Kennedy, Atem informed Kennedy that Kennedy was his father and that Atem had to be a citizen of the United States or have someone adopt him in order to obtain a United States passport. Kennedy stated that he was stunned by Atem’s claim that he was Atem’s father.
 

 Based on these documents, on May 21, 2003, the Immigration Judge ordered Atem removed from the United States. Implicit in this order is the Immigration Judge’s finding that Atem is an alien and not a citizen of the United States. The Board of Immigration Appeals has no record showing that Atem ever appealed the decision of the Immigration Judge.
 

 On March 13, 2003, Atem filed this petition for a writ of habeas corpus. Respondent filed a timely motion to dismiss the petition on September 24, 2003. Atem responded to the motion to dismiss on November 19, 2003. On November 24, 2003, respondent withdrew his argument that personal jurisdiction was lacking, and provided notice that Atem is no longer being held in immigration custody.
 

 II.
 

 As an initial matter, Atem’s petition for a writ of habeas corpus seeking release from BICE custody is moot owing to the fact that he is no longer in BICE custody.
 
 See Spencer v. Kemna,
 
 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (case is moot if petitioner received what he pleaded such that “a favorable judicial decision” cannot redress any “actual injury”). Nevertheless, because Atem was in BICE custody at the time his petition was filed, his transfer to a D.C. correctional facility does not moot that portion of his petition pertaining to the non-custodial issues of his petition, namely his claim of United States citizenship and the alleged improper revocation of his United States passport.
 
 See Smith v. Ashcroft,
 
 295 F.3d 425, 428 (4th Cir.2002) (concluding that transfer from immigration custody does not destroy habeas jurisdiction) (citations omitted). Accordingly, Atem’s citizenship and closely related passport revocation claims must be addressed.
 

 III.
 

 Subject matter jurisdiction is the threshold inquiry. And, insofar as Atem claims that he is a United States citizen, the merits of that claim are not, in the first instance, reviewable in the district court.
 

 It is important to note in this regard that the procedural posture of this case is somewhat unusual. Atem filed his habeas petition on March 13, 2003 — after
 
 *DCCCXXXIX
 
 BICE issued him a Notice to Appear before an immigration judge for removal proceedings, but
 
 before
 
 the immigration judge ordered that Atem be removed from the United States. Since his initial habeas filing, Atem has filed, on June 3, 2003, a Motion to Stay Removal Order, and to Grant Summary and Declaratory Judgments that,
 
 inter alia,
 
 he is a United States citizen. As a result, although Atem filed his habeas petition before any removal order had been entered, Atem’s claim that he is a United States citizen now arises in the context of his removal proceeding. This is significant, as jurisdiction over citizenship claims arising in the context of removal proceedings is governed by § 242(b)(5) of the Immigration and Nationality Act.
 
 See 8
 
 U.S.C. §§ 1252(b)(2)
 
 &
 
 (b)(5).
 
 [8]
 
 This section provides that where, as here, a petitioner claims to be a citizen of the United States, the court of appeals for the judicial circuit in which the immigration judge completed the proceedings first determines whether there exists any genuine issue of material fact regarding the petitioner’s nationality. Based on this initial determination, the court of appeals either decides the issue of petitioner’s nationality on the pleadings, or alternatively, transfers the proceeding to the appropriate district court for a hearing on the nationality claim. 8 U.S.C. §§ 1252(b)(5)(A) & (b)(5)(B).
 

 Given this statutory scheme, it is clear, as courts have consistently held, that Atem may not bring his claim of United States citizenship first in a district court through a habeas petition. Section 1252(b)(5) of Title 8 is the exclusive statutory method of determining Atem’s claim of citizenship; and this claim must be brought as a petition for review of a final order of removal. The appropriate forum for a claim of United States citizenship in these circumstances is a federal circuit court of appeals.
 
 [9]
 
 District courts, therefore, have no subject matter jurisdiction to determine claims of United States citizenship unless the matter has first been reviewed by a court of appeals and subsequently referred to the district court for a fact-finding hearing. There is thus no jurisdiction here to adjudicate the merits of Atem’s citizenship claim on a habeas petition brought pursuant to 28 U.S.C. § 2241.
 
 [10]
 

 In an attempt to circumvent this result, Atem relies on 22 U.S.C. § 2705 and the Ninth Circuit’s decision in
 
 Magnuson v. Baker,
 
 911 F.2d 330, 336 (9th Cir.1990). Yet, neither of these authorities alters the
 
 *DCCCXL
 
 conclusion that Atem’s citizenship claim must be heard by the court of appeals on a petition for review of a final order of removal, and not in the first instance by a district court on a habeas petition brought pursuant to 28 U.S.C. § 2241. The statute Atem cites, § 2705, is simply irrelevant on this point; it merely provides that a passport shall have the same force and effect as a certificate of naturalization or citizenship issued by the Attorney General or a court of naturalization jurisdiction. 22 U.S.C. § 2705. Significantly, nothing in the statute confers on district courts any jurisdiction to hear citizenship disputes. Nor does the statute preclude the Department of State from revoking, as here, a fraudulently obtained passport. Similarly unavailing to Atem is
 
 Magnuson,
 
 as it neither addresses, nor holds, that district courts may, in the first instance, hear the merits of citizenship claims on a habeas petition.
 
 [11]
 

 This, of course, does not end the analysis, however, because district courts may transfer citizenship claims incorrectly brought before them on habeas to the court of appeals pursuant to 28 U.S.C. § 1631.
 
 [12]
 
 A prerequisite to transferring a case under § 1631 is the requirement that the case could have been filed with the transferee court at the time it was actually filed in the transferor court. 28 U.S.C. § 1631. This prerequisite cannot be met here for two reasons. First, at the time Atem initially filed his habeas petition, the immigration judge had yet to issue an order of removal. Second, and more importantly, Atem failed to exhaust his administrative remedies by not appealing the decision of the immigration judge to the Board of Immigration Appeals (BIA).
 
 See
 
 8 U.S.C. § 1252(d)(1) (“A court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right.”). This petition would have been eligible for § 1631 transfer to the court of appeals had there been a final order of removal from which a petition for review might properly have been filed with the court of appeals on the date Atem filed his habeas petition. But because there was no final order of removal at the time Atem’s habeas petition was filed and because he failed to exhaust his administrative remedies, a § 1631
 
 *DCCCXLI
 
 transfer of Atem’s citizenship claim to the court of appeals is not available.
 

 Yet, further consideration of Atem’s habeas petition is warranted because Atem’s petition may also be read as a claim that his United States passport was cancelled by the Department of State without procedural due process. There is jurisdiction to review this due process claim, as it is settled that district courts have subject matter jurisdiction over habe-as claims pursuant to 28 U.S.C. § 2241 that arise from immigration decisions that pertain to pure questions of law.
 
 See INS v. St. Cyr,
 
 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).
 

 In making his procedural due process argument, Atem again relies on
 
 Magnu-son.
 
 Once again, Atem’s reliance on
 
 Mag-nuson
 
 is unavailing. There, the Ninth Circuit held that because a United States passport is conclusive evidence of citizenship pursuant to 22 U.S.C. § 2705, a passport may not be revoked without a pre-revocation hearing. 911 F.2d at 334. But significantly, this was a holding reached on statutory, not constitutional grounds. Specifically, the Ninth Circuit reached this result by reading the language in § 2705 as “a clear instruction from Congress to treat passports in the same manner as certificates of citizenship or certificates of naturalization” in all respects.
 
 Id.
 
 Because Congress had placed certain limitations on the Attorney General’s and naturalization courts’ powers to revoke these certificates, the Ninth Circuit concluded that § 2705 mandated that these same limitations apply to the Secretary of State’s power to revoke a passport.
 
 Id.
 
 at 335. A pre-revocation hearing was one such statutory limitation.
 
 Id.
 
 Thus, the
 
 Magnuson
 
 holding was rendered entirely on statutory grounds and the Ninth Circuit never reached the issue of what procedure, if any, was
 
 constitutionally
 
 required before revocation of a passport.
 
 [13]
 

 It is significant, therefore, that the legal landscape regarding cancellation of passports has changed substantially since
 
 Mag-nuson
 
 was decided in 1990. In 1994, Congress added a section to the Immigration and Nationality Act authorizing the Secretary of State to cancel passports and reports of birth if it appeared that they were obtained illegally, fraudulently, or erroneously. 8 U.S.C. § 1504. In addition, § 1504 provides that “[t]he cancellation under this section of any document purporting to show the citizenship status of the person to whom it was issued shall affect
 
 only the document and not the citizenship status
 
 of the person in whose name the document was issued.”
 
 Id.
 
 (emphasis added). In light of Congress’ enactment of § 1504, the Ninth Circuit’s conclusion that a passport cannot be revoked without a pre-revocation hearing is no longer persuasive. This is so because Congress has now expressly authorized the Secretary of State to revoke passports in certain instances and in doing so, did not see fit to limit this authority by requiring a pre-revocation hearing.
 
 See
 
 8 U.S.C § 1504.
 

 As a general matter, however, the Department of State is required to inform the person whose passport is being revoked of the procedures for seeking a prompt post-cancellation hearing.
 
 Id.
 
 See-
 
 *DCCCXLII
 
 tions 51.81-51.89 of Title 22 of the Code of Federal Regulations describe the procedures for such a hearing. 22 C.F.R. §§ 51.81-51.89. Yet, not all cancellations warrant such hearings; there are instances where a post-cancellation hearing is not required. Thus, § 51.80 of Title 22 of the Code of Federal Regulations provides that a post-cancellation hearing is not required in four specific circumstances, namely—
 

 (1) Noncitizenship,
 

 (2) Refusal under the provisions of § 51.70(a)(8) [precluding issuance of a passport in any case where the applicant has been certified by the Secretary of Health and Human Services as notified by a state agency under 42 U.S.C. § 652(k) to be in arrears of child support in an amount exceeding $5,000.00],
 

 (3) Refusal to grant a discretionary exception under the emergency or humanitarian relief provisions of § 51.71(c), or
 

 (4) Refusal to grant a discretionary exception from geographical limitations of general applicability,
 

 22 C.F.R. § 51.80(a). None of these exceptions applies to Atem. This conclusion is readily apparent from the nature of exceptions (2) through (4). Only exception (1) — noncitizenship—at first blush may appear to apply to Atem, although on closer scrutiny, it is clear that this exception is also inapplicable. The preclusion of a prompt post-cancellation hearing in cases of noncitizenship was announced in the Department of State’s Final Rule on April 22, 1999.
 
 See
 
 64 F.R. 19713. There, the Department of State equated passport revocation by reason of noncitizenship with “judicial denaturalization.”
 
 [14]
 

 Id.
 
 In such cases, no post-cancellation hearing is necessary because there has already been an adjudication of the underlying cause for cancellation: A judicial denaturalization proceeding.
 

 Atem, of course, is not a noncitizen due to any judicial denaturalization proceeding and hence 22 C.F.R. § 51.80(a)(1), properly construed, does not apply to him.
 
 [15]
 
 Moreover, it is clear that Congress requires “written notice of the cancellation of [a passport], together with the procedures for seeking a prompt post-cancellation hearing” in cases where the Secretary of State cancels a United States passport because it was “illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary.” 8 U.S.C. § 1504. Because the revocation of Atem’s passport does not fit within the regulatory exceptions enumerated in 22 C.F.R. § 51.80(a), it appears that Atem was statutorily entitled to “a prompt post-cancellation hearing,” within the Department of State, which he did not receive, although he did receive a statement of reasons for the cancellation of his passport.
 

 Ultimately, however, the absence of a post-cancellation hearing is not of constitutional significance here because Atem effectively received a post-cancellation hearing through the removal proceedings that took place before an immigration judge on February 24, 2003. At his removal hearing, the immigration judge was
 
 *DCCCXLIII
 
 constitutionally required to find by “clear, unequivocal, and convincing” proof that Atem should be removed from the United States.
 
 See Woodby v. INS,
 
 385 U.S. 276, 285, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). This finding necessarily included a determination that Atem was not, in fact, a United States citizen for only aliens are subject to removal from the United States.
 
 See
 
 8 U.S.C. § 1227. On this record, therefore, it is clear that Atem received notice of the reasons for the cancellation of his passport. It is also clear that he has had an opportunity to contest the evidence regarding his citizenship status in a removal hearing before an immigration judge and that this hearing comports with procedural due process under the balancing test set forth in
 
 Mathews v. Eldridge,
 
 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
 
 [16]
 
 Moreover, had Atem appealed the immigration judge’s decision to the BIA, he would have had yet another opportunity to prove his citizenship before a federal circuit court of appeals.
 

 Also fatally flawed is Atem’s due process claim that the revocation of his passport concurrently deprived him of United States citizenship in that a passport serves as proof of United States citizenship pursuant to 22 U.S.C. §'2705. Atem appears to argue that because a passport is proof of United States citizenship, any passport revocation deprives the holder of citizenship. This simply is not the case. Although Atem plainly may no longer rely on his United States passport as proof of United States citizenship, he may assert his citizenship by other methods, such as a certified birth certificate or a conclusive paternity test establishing that he is the biological son of a United States citizen.
 
 See Kelso v. U.S. Department of State,
 
 13 F.Supp.2d 1, 4 (D.D.C.1998) (“[T]o admit that passports are evidence of citizenship is to say nothing about whether their revocation implicates the fundamental right of citizenship.”). Indeed he was free to do precisely this at his immigration hearing. As already noted, the statute that allowed the Department of State to cancel Atem’s passport specifically states that “cancellation under this section ... shall affect only the document and not the citizenship status of the person in whose name the document was issued.” 8 U.S.C. § 1504. Accordingly, the revocation of Atem’s passport did not deprive him of his alleged citizenship, and Atem’s claim of denial of due process on this ground must fail.
 

 IV.
 

 For the reasons stated above, Atem’s petition must be dismissed insofar as he seeks to litigate his citizenship claim in the district court for such a claim must be addressed, in the first instance, to the court of appeals. Moreover, although the record reflects that Atem did not receive a post-passport cancellation hearing, he received adequate process before an immigration judge during his removal hearing, where he was entitled to raise and litigate the merits of his citizenship claim and appeal any adverse result to the BIA and then the court of appeals. Accordingly,
 
 *DCCCXLIV
 
 petitioner’s requests for default judgment, reinstatement of his passport, declaratory judgment, and summary judgment must be denied, and respondent’s motion to dismiss the petition must be granted.
 

 An appropriate order will issue.
 

 [1]
 

 . At the time this petition was filed, Atem was housed in Arlington, Virginia, as an immigration detainee. On June 2, 2003, Atem was transferred to the custody of the United States Marshal; and is currently in federal, non-immigration custody.
 

 [2]
 

 . Atem initially identified only John Ashcroft as a respondent. By motions dated April 10, 2003, and June 3, 2003, Atem seeks to add Tom Ridge, Secretary, Department of Homeland Security; and Colin Powell, Secretary, Department of State, as respondents. Given the disposition of this case, it is unnecessary to reach the issue of adding these parties as respondents.
 

 [3]
 

 . The Immigration and Naturalization Service (INS) was transferred to the Department of Homeland Security, re-structured into three separate agencies, and re-named, effective March 1, 2003.
 
 See
 
 68 Fed.Reg. 9824 (Feb. 28, 2003). The Bureau of Immigration and Customs Enforcement (BICE) is the resulting agency tasked,
 
 inter alia,
 
 with the detention, custody, and removal of aliens.
 

 [4]
 

 .Atem incorrectly argues he is entitled to default judgment because respondent did not respond to his petition for a writ of habeas corpus within the prescribed time. In fact, pursuant to the August 25, 2003 Order, respondent filed a timely response on September 24, 2003. Accordingly, Atem's Motion for Default Judgment must be denied.
 

 [5]
 

 . In this regard, although not material to the instant petition, the District of Columbia Department of Consumer and Regulatory Affairs (DCRA) found in 1994 that Atem had engaged in various deceptive business practices resulting in his alien customers paying for services that were never provided. The DCRA ordered Atem to cease and desist in these practices and to pay restitution and punitive damages. He failed to comply with the DCRA's order and a complaint for enforcement of an administrative order was filed in the Superior Court for the District of Columbia on August 10, 1994, on which date a summons was issued.
 

 [6]
 

 . During the course of the INS investigation, an investigator contacted the American Embassy in Yaounde, Cameroon, and learned that Atem's copy of his birth certificate and related certificate of legitimization were fraudulent. In Cameroon, illegitimate births are not legitimized by local government councils, as Atem’s document purports, but are legitimized only by courts. Cameroon courts may issue a legitimization decree only if the father appears before the court and personally declares himself the biological parent of the child. The court-issued legitimization document is then presented by one of the parents to the local council registry which issues the original birth certificate. The council amends its records to reflect the legitimization and also adds the father’s name to the certificate originally issued to the mother. Significantly, the certificate of legitimization presented by Atem was not issued by a Cameroon court, nor was it used anywhere in Cameroon to correct birth records. (Resp't Br. in Supp. at Ex. 3, INS Report, June 4, 2002.)
 

 [7]
 

 . On May 14, 2002, Department of Labor Special Agent Andrew Shea and U.S. Attorney's Office Criminal Investigator Diane Eickman conducted a videotaped interview of Joseph Kennedy at a nursing home in St. Pe-tersburg, Florida. Prior to the interview, it was discovered that Kennedy had suffered a stroke and was in failing health. Kennedy was unable to confirm or deny that Atem was his son, but did consent to DNA testing. (Resp’t Br. in Supp. at Ex. 3, INS Report, June 4, 2002.)
 

 [8]
 

 .
 
 See also, e.g., Chau v. Immigration & Naturalization Serv.,
 
 247 F.3d 1026, 1028 n. 2 (9th Cir.2001) (“[0]nce removal proceedings have been initiated, a petition for review under 8 U.S.C. § 1252(b)(5) is the only avenue by which a person may seek a judicial determination of his or her status as a national of the United States.”).
 

 [9]
 

 .
 
 See Alexander v. INS,
 
 74 F.3d 367, 369 (1st Cir.1996) (holding that an alien cannot bring United States citizenship claim first in district court);
 
 Taniguchi v. Schultz,
 
 303 F.3d 950, 955 (9th Cir.2002) (same);
 
 see also Brathwaite v. Ashcroft,
 
 No. 3:02-CV-01012-L, 2003 WL 22005871, at *19 (N.D.Tex. Aug. 22, 2003) (stating that a district court "lacks subject matter jurisdiction because only a Circuit Court of Appeals has initial jurisdiction to consider Petitioner’s claim to be a citizen of the United States in connection with his removal proceedings”);
 
 Constanza v. Riley,
 
 259 F.Supp.2d 418, 420 (E.D.Pa.2003) (holding that claims of citizenship must first be addressed by a circuit court of appeals).
 

 [10]
 

 .See Taniguchi,
 
 303 F.3d at 955 ("District courts retain jurisdiction under 28 U.S.C. § 2241 when the petitioner has no other remedy. Here, though, § 1252(b)(5) provides a specific remedy. It is the exclusive means of determining U.S. citizenship for aliens in removal proceedings. Thus jurisdiction was lacking in the district court for a determination of citizenship under § 2241 because another statutory remedy is available to establish citizenship.”) (internal citation omitted).
 

 [11]
 

 .
 
 Magnuson
 
 is also factually distinguishable from the case at bar. There, the Department of State, without providing a hearing, revoked, the United States passport of an individual who, like Atem, asserted his United States citizenship on the basis of derivative citizenship.
 
 Magnuson,
 
 911 F.2d at 331. Yet, the factual similarity ends there. There is no suggestion in
 
 Magnuson
 
 that the petitioner there acquired his passport by fraud, whereas here it appears that Atem supported his passport application by presenting false documents and duping an elderly man into believing, falsely, that he was Atem's father. Nor is this an insignificant distinction, as the Ninth Circuit specifically noted that the petitioner's passport in that case was revoked not for fraud, a basis that could legitimately serve as a basis for revocation, but on the Secretary's "second thoughts,” which are not a proper basis for revocation.
 
 Magnuson,
 
 911 F.2d at 336 n. 14.
 

 [12]
 

 . Titled “Transfer to cure want of jurisdiction,” § 1631 states:
 

 Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.
 

 28 U.S.C. §1631.
 

 [13]
 

 . In this respect, it is worth noting that the Supreme Court held in
 
 Haig v. Agee,
 
 453 U.S. 280, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981), that a pre-revocation hearing is unnecessary to revoke an individual's passport for national security or foreign policy reasons. 453 U.S. 280, 310, 101 S.Ct. 2766. 69 L.Ed.2d 640 (1981). There, the Supreme Court found that "[t]he Constitution’s due process guarantees call for no more than what has been accorded here: a statement of reasons and an opportunity for a prompt post-revocation hearing.”
 
 Id.
 

 [14]
 

 . This also corresponds with 22 C.F.R. § 51.72(c), which expressly authorizes cancellation of a United States passport when "[t]he Department of State is notified that a certificate of naturalization issued to the applicant for or bearer of the passport has been canceled by a federal court.” 22 C.F.R. § 51.72(c).
 

 [15]
 

 . The government mistakenly argues that this exception does apply to Atem. A proper reading of the noncitizenship exception, taking into account the definition of noncitizen in the Final Rule, 22 C.F.R. § 51.72(c), and the nature of the three other regulatory exceptions, seriously undermines this argument.
 

 [16]
 

 . Procedural due process is implicated in this case because cancellation of a United States passport implicates a specific liberty interest, namely the right to travel internationally.
 
 See Haig v. Agee,
 
 453 U.S. 280, 307, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981) ("[T]he ‘right’ of international travel has been considered to be no more than an aspect of the ‘liberty’ protected by the Due Process Clause of the Fifth Amendment.”). No property interest is implicated because United States passports are not the property of the individuals to whom they are issued.
 
 See
 
 22 C.F.R. § 51.9 (stating that United States passports shall at all times remain the property of the United States and shall be returned to the Government upon demand).